1  Tomas A. Guterres, Esq. (State Bar No. 152729)
2  Catherine M. Mathers, Esq. (State Bar No. 221983)
   Erin R. Dunkerly, Esq. (State Bar No. 260220)
3  COLLINS COLLINS MUIR + STEWART LLP
4  1100 El Centro Street
   South Pasadena, CA  91030
5  (626) 243-1100 – FAX (626) 243-1111
6  Email:  tguterres@ccmslaw.com
   Email:  cmathers@ccmslaw.com
7  Email:  edunkerly@ccmslaw.com
8  Attorneys for Defendants, COUNTY OF LOS ANGELES, DEPUTY DAVID
   CHEVEZ and DEPUTY LAWRENCE SWANSON, JR.
9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  N.G. AND L.G., minors, by and          ) CASE NO. CV13-008312-SVW(FFMx)
14  through their Guardian ad Litem,        ) *[Assigned to Judge Stephen V. Wilson,*
    Lilliana Magallon; SARA PEREZ,          ) *Courtroom 6]*
15                                          )
16                      Plaintiffs,         ) **MOTION IN LIMINE NO. 1 TO**
                                            ) **EXCLUDE EVIDENCE OF DEPUTY**
17         vs.                              ) **TATTOOS; DECLARATION OF ERIN**
                                            ) **DUNKERLY AND EXHIBITS**
18  COUNTY OF LOS ANGELES;                  )
19  LEROY BACA, DEPUTIES DAVID              ) **PRETRIAL CONF: May 12, 2014**
    CHEVEZ and LAWRENCE                     ) **TIME:            3:00 p.m.**
20  SWANSON, JR.; AND DOES 3 – 10,          ) **COURTROOM:  6**
21                                          )
22                      Defendants.         ) **Trial Date:    May 20, 2014**
                                            )
23  _____    ) *Meet & Confer pursuant to Local Rule 7-3*
24                                          ) *April 7, 2014*

25                            I.

26                     INTRODUCTION

27         Defendants David Chevez and Lawrence Swanson, Jr., move for an order in

28  limine excluding all evidence, testimony, or reference to any tattoos on any deputy

Collins Collins
Muir + Stewart LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone  (626) 243-1100
Fax     (626) 243-1111

18782

1

including, but not limited to Chevez and Swanson. At their depositions, plaintiffs' counsel asked Chevez and Swanson repeatedly about tattoos they obtained in mid-2013. Despite the fact that there are no facts linking these tattoos to the incident at issue in this lawsuit that occurred in October 2012, plaintiffs' counsel intends to insinuate a connection at trial. Such argument relies on mere speculation for the purposes of inflaming the passions of the jury against the deputies. Reference to the tattoos of law enforcement are irrelevant to the issues in this case and would be unduly prejudicial to defendants. For these reasons, such evidence or reference should be precluded.

## II.

## DESPITE PLAINTIFFS' ARGUMENTATIVE QUESTIONING, THE DEPUTIES TESTIFIED THAT THEY OBTAINED TATTOOS AS A SHOW OF PRIDE IN THEIR STATION, AND CONFIRMED THERE WAS NO CONNECTION TO THE SHOOTING OF GUTIERREZ

At their respective depositions, deputies Chevez and Swanson were asked at length about their tattoos. Both testified that in 2013 they each had their LASD station's mascot, which is a reaper, tattooed on them. Declaration of Erin Dunkerly ("Dunkerly Decl."), ¶5, Exhibit ("Ex.") C (Swanson Depo. Vol. 2) at 167:21-21; 170:23-25; ¶1, Ex. A (Chevez Depo. Vol. 1) at 64:14-16. Both deputies testified that the reason they received the tattoos in 2013 was to show pride in their station. Dunkerly Decl., ¶5, Ex. C (Swanson Depo. Vol. 2) at 166:20-25; 167:4-8; 168:11-19; 171:15-19; ¶4, Ex. B (Chevez Depo. Vol. 2) at 69:15-22; 72:21-73:3.)

During the deposition, counsel for plaintiffs attempted to link the tattoos to the shooting of Gutierrez. Dunkerly Decl., ¶5, Ex. C (Swanson Depo. Vol. 2) 178:12-14; ¶4, Ex. B (Chevez Depo. Vol. 2) 69:16-70:20; 73:15-74:4; 75:11-76:1; 77:6-80:25.) While meeting and conferring on this motion, counsel for plaintiff confirmed that at trial they intend to argue that these tattoos on Chevez and Swanson, somehow establish a motive for Chevez's shooting of Jilberto Gutierrez, which occurred

Collins Collins
Muir + Stewart LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone  (626) 243-1100
Fax     (626) 243-1111

18782

2

**MOTION IN LIMINE NO. ONE TO EXCLUDE DEPUTY TATOOS**

approximately six months *prior*. Dunkerly Decl. ¶6. Defendants and informed and believe that plaintiffs intend to argue that Chevez and Swanson's action of obtaining a station tattoo is tantamount to their being in an illegal gang and that the tattoos are similar to gang tattoos to commenmorate and/or incentivize the killing of others. Dunkerly Decl. ¶6. Counsel for defendants noted to plaintiffs the complete lack of any evidence produced to date that suggests anything connecting Deputies Chevez or Swanson to such inflammatory conduct.

## III.

## EVIDENCE OF LASD TATTOOS ARE IRRELEVANT TO THIS CASE; RATHER, PLAINTIFFS INTEND TO RELY ON HEARSAY AND SPECULATION WHICH WOULD PREJUDICE DEFENDANTS

Defendants move for an order excluding any evidence, testimony, or reference to any tattoos on any deputy including, but not limited to Chevez and Swanson because they were obtained long after the shooting and there are no credible facts establishing any connection between the shooting and the tattoos. Therefore, the tattoos are irrelevant to the issues of this case. See FRE 401 and 402 (relevance).

To the extent plaintiffs seek to introduce evidence about tattoos among other members of the LASD, such evidence would not only be irrelevant, but would also constitute inadmissible hearsay. FRE 801(c) (hearsay).

Finally, even if plaintiffs were able to cobble together some basis to admit evidence of tattoos of LASD deputies, such evidence, testimony, or reference would nonetheless be unduly prejudicial to defendants because it would suggest to the jury that Chevez and Swanson were tantamount to gang members conducting a hit. FRE 403 (probative value is outweighed by unfair prejudice); Dunkerly Decl. ¶7.

## IV.

## CONCLUSION

Deputies Chevez and Swanson were asked and testified as to tattoos received months after the October 18, 2012 incident that is at issue in this case. Based on the

Collins Collins
Muir + Stewart LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone  (626) 243-1100
Fax     (626) 243-1111

18782

3

lines of questioning at the depositions, it appears plaintiffs would raise the existence of the tattoos to erroneously argue that the tattoos obtained after the shooting were somehow a cause of or a motivation for the shooting. To the contrary, there is no credible evidence that these tattoos were in any way related to the shooting; therefore, reference to the tattoos would only serve to prejudice the defendants, consume an undue amount of time and improperly inflame the passions of the jury. For these reasons, Defendants respectfully request this Court grant motion in limine number 1 and preclude all evidence, testimony, or reference to any tattoos on any deputy including, but not limited to Chevez and Swanson.

DATED:  April, 14, 2014          COLLINS COLLINS MUIR + STEWART LLP

By: _____

ERIN R. DUNKERLY
TOMAS A. GUTERRES
CATHERINE M. MATHERS
Attorneys for Defendants, COUNTY OF
LOS ANGELES, DEPUTY DAVID
CHEVEZ and DEPUTY LAWRENCE
SWANSON, JR.

Collins Collins
Muir + Stewart LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone   (626) 243-1100
Fax     (626) 243-1111

18782

4

**MOTION IN LIMINE NO. ONE TO EXCLUDE DEPUTY TATOOS**

**DECLARATION OF ERIN R. DUNKERLY, ESQ.**

I, Erin R. Dunkerly, declare:

1.      I am an attorney admitted to practice before all the courts of the State of California.  I am an associate in the law firm of Collins, Collins, Muir + Stewart, LLP, counsel of record for Defendants herein, County of Los Angeles,  Leroy Baca, Deputy Lawrence Swanson, David Chevez. The following facts and circumstances are personally known to me and if called upon to do so, I could and would competently testify as to them. As to those matters stated upon information and belief, I am informed and believe them to be true.

2.      This declaration is provided in support of Chevez and Swanson's Motion in limine number one.

3.      Attached hereto as Exhibit "A" is a true and correct copy of relevant portions of the deposition of David Chevez, Vol. 1.

4.      Attached hereto as Exhibit "B" is a true and correct copy of relevant portions of the deposition of David Chevez, Vol. 2.

5.      Attached hereto as Exhibit "C" is a true and correct copy of relevant portions of the deposition of Lawrence Swanson, Volume 2.

6.      On April 10, 2013, in a telephone conference call with plaintiffs' counsel Robert Shtofman, Samuel Ogbogu, and Gary Casselman, plaintiffs claimed the tattoos show motive even though the tattoos were obtained months after the incident Plaintiffs' counsel compared Chevez and Swanson's tattoos to tattoos of prison gang members who obtain a "tear drop" tattoo on their face after successfully killing another inmate. Through that conversation and the questioning of the deputies at deposition, I am informed and believe that at atrial plaintiffs intend to argue that these tattoos on Chevez and Swanson, somehow establish a motive for Chevez's shooting of Jilberto Gutierrez, which occurred approximately six months *prior*. Plaintiffs counsels' theory is based only on their own speculation and as of the signing of this

Collins Collins
Muir + Stewart LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone  (626) 243-1100
Fax     (626) 243-1111

18782

**MOTION IN LIMINE NO. ONE TO EXCLUDE DEPUTY TATOOS**

declaration, I have received no credible evidence linking the tattoos of Chevez or Swanson in any way to the shooting of Gutierrez.

7.    I am informed and believe that at trial, evidence of the deputies' tattoos would consume an undue amount of trial time. Were plaintiffs permitted to introduce evidence or argument about the tattoos, defendants would then be put in the position of explaining the contents of tattoos that were obtained six months after the shooting at issue. This would amount to a mini trial within the trial to establish the reasons why tattoos were obtained. This process would not only consume trial time, but would confuse the jury.

8.    I met and conferred with plaintiffs' counsel regarding this and other motions in limine by sending a letter on April 7, 2014, which identified the proposed motions in limine and the legal basis for each. I also spoke with all three plaintiffs' counsel by telephone on April 10, 2014 and we were unable to resolve this issue.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed April 14, 2014, at South Pasadena, California.


_____
ERIN R. DUNKERLY

Collins Collins
Muir + Stewart LLP
1100 El Centro Street
So. Pasadena, CA 91030
Phone  (626) 243-1100
Fax     (626) 243-1111

18782

6

MOTION IN LIMINE NO. ONE TO EXCLUDE DEPUTY TATOOS

# EXHIBIT A

David Chevez                                                    March 5, 2014

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3

4

5    N.G. AND L.G., minors, by and    )
     through their Guardian ad Litem, )
6    Lilliana Magallon; SARA PEREZ,   )
                                       )
7                 Plaintiffs,          )
                                       )
8            vs.                       ) Case No.
                                       ) CV13-008312-SVW
9    COUNTY OF LOS ANGELES; LEROY      ) (FFMx)
     BACA; DAVID CHEVEZ; LAURENCE      )
10   SWANSON,; and DOES 5-10,          ) Volume I
                                       )
11                Defendants.          )
     _____)

12

13

14

15           VIDEOTAPED DEPOSITION OF DAVID CHEVEZ

16                   Los Angeles, California

17                 Wednesday, March 5, 2014

18

19

20

21

22

23

24   Reported by:  Elena C. Chester
                   CSR No. 10274
25   NDS Job No.:  161028

                                                              1

David Chevez                                                    March 5, 2014

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3

4

5   N.G. AND L.G., minors, by and     )
    through their Guardian ad Litem, )
6   Lilliana Magallon; SARA PEREZ,    )
                                      )
7                   Plaintiffs,       )
                                      )
8            vs.                      ) Case No.
                                      ) CV13-008312-SVW
9   COUNTY OF LOS ANGELES; LEROY      ) (FFMx)
    BACA; DAVID CHEVEZ; LAURENCE      )
10  SWANSON,; and DOES 5-10,          ) Volume I
                                      )
11                  Defendants.       )
    _____)

12

13

14

15           VIDEOTAPED DEPOSITION OF DAVID CHEVEZ,

16        taken on behalf of the Plaintiffs, at 4311

17        Wilshire Boulevard, Suite 308, Los Angeles,

18        California, on Wednesday, March 5, 2014,

19        beginning at 10:30 A.M. and ending at 2:57 P.M.,

20        before Elena C. Chester, Certified Shorthand

21        Reporter Number 10274.

22

23

24

25

                                                              2

David Chevez                                                    March 5, 2014

```
 1    APPEARANCES:

 2

 3    For the Plaintiffs:

 4         LAW OFFICE OF GARY S. CASSELMAN
           GARY S. CASSELMAN, ESQ.
 5         3415 South Sepulveda Boulevard
           Suite 100
 6         Los Angeles, California  90034
           (310) 314-4444
 7         garyscasselman@gmail.com

 8         LAW OFFICES OF SAMUEL OGBOGU
           BY:  SAMUEL OGBOGU, ESQ.
 9         4311 Wilshire Boulevard
           Suite 308
10         Los Angeles, California  90010
           (213) 624-1500
11         sogboguinclaw@aol.com

12         LAW OFFICE OF ROBERT S. SHTOFMAN
           ROBERT S. SHTOFMAN, ESQ.
13         18034 Ventura Boulevard
           Suite 296
14         Encino, California  91316
           (818) 609-0090
15

16

17    For the Defendants:

18         COLLINS COLLINS MUIR + STEWART, LLP
           BY:  CATHERINE M. MATHERS, ESQ.
19         100 El Centro Street
           South Pasadena, California  91030
20         (626) 243-1100
           cmathers@ccmslaw.com
21

22

23    Also Present:

24         DEPUTY LAWRENCE E. SWANSON, JR.

25
```

3

```
 1                          INDEX

 2      DEPONENT

 3      DAVID CHEVEZ

 4      EXAMINATION                                  PAGE

 5            By Mr. Casselman                          6

 6

 7

 8

 9                         EXHIBITS

10      MARKED                  DESCRIPTION          PAGE

11      Exhibit 1    Deponent's sketch  of the hospital   110
                     room

12

13      Exhibit 2    Side-view photo of Deputy Chevez,    151
                     standing/leaning position

14

15      Exhibit 3    Front-view photo of Deputy Chevez,   152
                     standing/leaning position

16

17

18

19         QUESTIONS SUBJECT TO INSTRUCTION NOT TO ANSWER

20                         (None)

21

22

23                  INFORMATION REQUESTED

24                         (None)

25
```

4

```
 1                    LOS ANGELES, CALIFORNIA;

 2              WEDNESDAY, MARCH 5, 2014; 10:30 A.M.

 3

 4              MR. CASSELMAN:  Good morning.  Today is

 5    March 5, 2014.  We are here, in the office of

 6    Mr. Ogbogu.  And that's at 4311 Wilshire Boulevard,

 7    Suite 308, Los Angeles, California.  And this is

 8    the deposition of David Chevez, C-h-e-v-e-z.  And

 9    this is the case of N.G. and L.G., et al., v.

10    County of Los Angeles, et al.; in U.S. District

11    Court; Case CV13-008312-SVW (FFMx).

12              My name is Gary Casselman.  And pursuant

13    to Federal Rules of Civil Procedure, Rule 28, I

14    will be the person video-ing the proceedings here.

15    I'm also an attorney for the plaintiffs, and so I

16    will be multitasking.

17              Hopefully, we won't have too many

18    construction workers whistling outside our window.

19              In any event, sir, have you ever had your

20    deposition taken before?

21              THE DEPONENT:  No.

22              THE REPORTER:  Counsel, would you like me

23    to swear the witness in?

24              MR. CASSELMAN:  All right.  Let's go

25    ahead and swear the witness.
```

                                                            5

David Chevez                                                    March 5, 2014

```
 1    have of any words?

 2         A.   I really can't give you -- I don't want

 3    to speculate.

 4         Q.   Now, you are trained that you are not

 5    allowed to use force against somebody because they

 6    use profanity against you; right?

 7         A.   Correct.  That would be unreasonable

 8    force.

 9         Q.   And by the way, do you have any tattoos

10    on yourself, sir?

11         A.   Yes, I do.

12              MS. MATHERS:  Objection.  It's a

13    violation of his privacy.

14         Q.   BY MR. CASSELMAN:  And on what part of

15    your body are they, sir?

16         A.   I have a tattoo on my ankle.

17         Q.   And what is it of?

18         A.   It's a tattoo of a reaper.

19         Q.   Like a Grim Reaper?

20         A.   Like a Grim Reaper, yes.

21         Q.   And which ankle is it, sir?

22         A.   It's on my left ankle.

23         Q.   And does it have a number?

24         A.   Yes, it does.

25         Q.   What's the number?
```

                                                            64

David Chevez                                                           March 5, 2014

```
 1          A.    96.

 2          Q.    And when did you receive it?

 3          A.    It would be sometime last year.

 4          Q.    After the shooting?

 5          A.    Yes, it was.

 6          Q.    And what would be the date that you got

 7    it?

 8          A.    I really don't know the date.

 9                MS. MATHERS:   You can just give him an

10    approximation.

11          Q.    BY MR. CASSELMAN:   This is early March.

12    So was it in December?   November?   I mean, it was

13    last year; right?

14          A.    No, the incident wasn't in March.

15          Q.    No.  I'm saying we are in March now.

16          A.    I'm sorry.

17          Q.    So when, in time, did you get your "Grim

18    Reaper No. 96" tattoo?

19          A.    Well, I never said it was a Grim Reaper.

20    I (unintelligible) --

21                (Two or more voices speaking at once.)

22          Q.    BY MR. CASSELMAN:   It was a reaper?

23          A.    It was described as "a Grim Reaper."

24                MS. MATHERS:   He just wants the

25    approximate date that you got the tattoo.
```

                                                              65

```
 1              THE DEPONENT:   Probably about -- I'd say

 2      about a year ago.   Maybe March of 2013.

 3          Q.   BY MR. CASSELMAN:   March of 2013.   Where

 4      did you get it?

 5          A.   At -- well, it was a tattoo shop.   And I

 6      really don't remember where it was at.

 7          Q.   Well, let's start out with the county.

 8      Was it L.A. county?

 9          A.   Yeah, I believe so.

10          Q.   And what was the name of the tattoo shop

11      or its location?

12          A.   I really don't remember.

13          Q.   How did you learn about the tattoo

14      shop?

15          A.   What do you mean, "how did I learn about

16      it"?

17          Q.   Pardon me?

18          A.   What do you mean by "how did I learn

19      about it"?

20          Q.   Well, why did you pick that particular

21      tattoo shop?

22              MS. MATHERS:   I'll object on relevance

23      grounds.

24              But go ahead.

25              THE DEPONENT:   I didn't pick a tattoo
```

66

David Chevez                                                    March 5, 2014

```
 1    shop.  I really --
 2         Q.   BY MR. CASSELMAN:  Well, you showed up
 3    there and you got a tattoo, sir.  Where did the
 4    idea come from to go to that shop?  Did someone
 5    tell you?
 6         A.   No.  I really don't know why we went to
 7    that shop.
 8         Q.   Who was with you?  You say "we."
 9         A.   I was with a couple of buddies of mine.
10         Q.   From the Sheriff's Department?
11         A.   Some of them were, yes.
12         Q.   Please identify the people that you were
13    with.
14         A.   I was with --
15              MS. MATHERS:  Just objection, for the
16    record, that this violates the right of privacy to
17    (sic) individuals not a party to this litigation.
18              MR. CASSELMAN:  They are witnesses.
19         Q.   Go ahead, sir.
20         A.   I was with Deputy Swanson, Deputy Munoz,
21    and Deputy Meza.
22         Q.   What is Munoz's first name?
23         A.   Ramon Munoz.
24         Q.   And which of you got tattoos that day?
25         A.   Deputy Swanson and I got tattoos that
```

                                                        67

David Chevez                                                    March 5, 2014

1    day.

2        Q.    Both on your left ankle?

3        A.    Yes, sir.

4        Q.    And describe this reaper tattoo that you

5    have, with the number.   Or you can show it to me.

6            MS. MATHERS:   He will not be showing

7    tattoos during the deposition, but I will allow him

8    to physically describe it.

9            THE DEPONENT:   Just a reaper.   Just a

10   reaper.

11       Q.    BY MR. CASSELMAN:   Just a reaper?

12       A.    Yeah, it's just a reaper.

13       Q.    So you've always wanted to have a reaper

14   tattoo?   Or sometime in 2013, after the October

15   2012 incident, you decided to get a reaper

16   tattoo?

17            MS. MATHERS:   Objection.

18   Argumentative.

19       Q.    BY MR. CASSELMAN:   Let's start over.

20   When did you get the idea to have a reaper

21   tattoo?

22       A.    As -- it's a kind of a vague question.   I

23   mean, can you --

24       Q.    It's not vague at all, sir.   When did you

25   get the idea to get a reaper tattoo?   I can't make

                                                            68

```
 1    it any plainer than that.

 2              MS. MATHERS:  Objection.  Argumentative.

 3              Just tell him when you made the decision

 4    to get the tattoo.

 5              THE DEPONENT:  I've always wanted a

 6    tattoo.

 7         Q.   BY MR. CASSELMAN:  What about that -- do

 8    you have other tattoos?

 9         A.   No, I do not.

10         Q.   Okay.  So you always wanted a tattoo.

11    Did you always want a reaper tattoo?

12         A.   Not necessarily a reaper tattoo.  But I

13    always wanted a station tattoo.  I've always wanted

14    one.

15         Q.   A station tattoo?  Okay.  What is a

16    station tattoo, as you understand it?

17         A.   It's a tattoo that people from different

18    stations would get, that would somehow -- they

19    would somehow show some type of pride, some type

20    of -- it's hard to describe.  But just, like, if

21    you are proud of something.  Something you would

22    get to show you are proud of (sic).

23         Q.   Are you proud that you killed

24    Mr. Gutierrez?

25              MS. MATHERS:  Objection.
```

                                                           69

1    Argumentative.

2              THE DEPONENT:   The fact that you are

3    asking me about tattoo (sic) and you are referring

4    it to Mr. Gutierrez is very, very -- it hurts me.

5    And it's very disappointing that you would even

6    mention that.

7        Q.   BY MR. CASSELMAN:   Well, I'm sorry to

8    disappoint you, sir, but (unintelligible) --

9              (Two or more voices speaking at once.)

10             (Reporter's request to speak one at a

11       time.)

12       Q.   BY MR. CASSELMAN:   You know that you left

13   a man's children fatherless, don't you, sir?

14             MS. MATHERS:   Objection.

15   Argumentative.

16             MR. CASSELMAN:   Well, the man is going

17   into ad hominem here, so I'm responding.

18             MS. MATHERS:   Well, I will object.   And

19   if it continues down this road, I will ask that we

20   take a break from the deposition.

21       Q.   BY MR. CASSELMAN:   Sir, let's get back on

22   the road that we were on.   When did you decide to

23   get a reaper tattoo?

24       A.   I do not know when.   I've always wanted

25   one.

70

David Chevez                                                    March 5, 2014

1       Q.   Always.   How old are you?

2       A.   I'm 33 years old.

3       Q.   What's your date of birth?

4       A.   March 11, 1980.

5       Q.   I'm sorry?

6       A.   March 11, 1980.

7       Q.   So since you were born, you wanted a

8   reaper tattoo?   You said you've "always wanted" it.

9       A.   No.

10      Q.   Were you exaggerating when you said

11  that?

12      A.   Yeah, I guess I was.

13      Q.   All right.   So let's get more accurate.

14  Did you -- when did you join the Sheriff's

15  Department?

16      A.   2005.

17      Q.   And what did you do before 2005?

18      A.   I did electrical work.

19      Q.   What kind of electrical work?

20      A.   Mainly, like, an apprentice.

21      Q.   So you were, like, an apprentice to an

22  electrician?

23      A.   Yeah.   I worked with my father.

24      Q.   Okay.   So you'd go to houses and do

25  electrician-type work?

                                                          71

David Chevez                                                    March 5, 2014

```
 1            A.    It was mainly commercial/industrial.

 2            Q.    Okay.  And in 2005, you joined the

 3     Sheriff's Department?

 4            A.    Correct.

 5            Q.    When did you -- in 2005?

 6            A.    Excuse me.  June of 2005.

 7            Q.    And that's when you first attended the

 8     academy?

 9            A.    Yes.

10            Q.    Is that the Rio Hondo Academy or

11     somewhere else?

12            A.    The academy at the L.A. -- our L.A.

13     County Sheriff's Department, which is in

14     Whittier.

15            Q.    STAR Center?

16            A.    STAR Center.

17            Q.    And so, before you joined the Sheriff's

18     Department, had you always wanted a reaper

19     tattoo?

20            A.    No.

21            Q.    So sometime after you joined the

22     Sheriff's Department, you decided you wanted a

23     reaper tattoo?

24            A.    Correct.

25            Q.    And that was to show pride in your
```

72

David Chevez                                                    March 5, 2014

1    involvement with the Sheriff's Department, at that

2    station?

3         A.   Correct.

4              (Mr. Shtofman joins the proceedings.)

5         Q.   BY MR. CASSELMAN:   So are you saying that

6    everybody who is at the South L.A. Station shows

7    pride in being there with a reaper tattoo on their

8    ankle, like yours?

9              MS. MATHERS:   Objection.   Lacks

10   foundation as to every deputy at the station.

11        Q.   BY MR. CASSELMAN:   Well, sir, how many

12   deputies at your station have a reaper tattoo, to

13   your knowledge?

14        A.   I don't know.

15        Q.   Well, was it a coincidence that you and

16   your partner, Swanson, decided to get reaper ankle

17   tattoos at the same time, at the same tattoo

18   parlor, after -- within months after the fatal

19   shooting of Mr. Gutierrez?

20             MS. MATHERS:   Objection.   Compound.

21   Argumentative.

22        Q.   BY MR. CASSELMAN:   You can answer.

23        A.   Like I said before, the tattoo had

24   nothing to do with the shooting.

25        Q.   So you say.   So you and Mr. Swanson

                                                            73

1   did -- Deputy Swanson -- did you discuss getting

2   these tattoos together?

3       A.   I don't remember if we discussed getting

4   the tattoos together.

5       Q.   But it just happened that you were both

6   at the same tattoo parlor, at the same time,

7   getting a reaper tattoo on your ankle?

8           Is that about how it happened?

9       A.   Correct.

10      Q.   Was it a coincidence, or did you go there

11  together?

12      A.   I told you we went together.  Yes.

13      Q.   All right.  And Munoz went with you;

14  correct?

15      A.   Deputy Munoz and Deputy Meza, yes.

16      Q.   What's the last name?

17      A.   Juan Meza, M-e-z-a.

18      Q.   Are these all folks who are deputies at

19  the same station as you?

20      A.   Yes, they are.

21      Q.   Okay.  Describe the design of the reaper

22  tattoo that you and Swanson received.

23          MS. MATHERS:  Objection.  Asked and

24  answered.

25          MR. CASSELMAN:  Never got an answer.

74

1              THE DEPONENT:   That -- it's a reaper --

2    tattoo of the reaper.

3         Q.   BY MR. CASSELMAN:   Well, what -- describe

4    what that is.   I mean, I have my own idea, but I

5    don't want to leave it up in the air, for anybody

6    to make their own conclusions.

7         A.   It's a tattoo of a reaper holding a --

8         Q.   Thing with -- a long curvy thing, with a

9    big staff?

10        A.   Yes.

11        Q.   That's, like -- that's, like, the symbol

12   for death, isn't it -- the reaper?

13             MS. MATHERS:   Objection.   Lacks

14   foundation.

15             If you know, you may answer.

16             THE DEPONENT:   I know it -- I've known it

17   to be a symbol for death.   That's not the only

18   symbol for it, but yeah, it's a symbol of death.

19        Q.   BY MR. CASSELMAN:   So it's your testimony

20   that you got this tattoo, with your partner, after

21   the shooting of Mr. Gutierrez, in which

22   Mr. Gutierrez died, to show pride?

23        A.   Like I said, you keep -- I know you want

24   to bring it in, and you want to somehow tie in the

25   tattoo with the unfortunate incident, but it had

75

David Chevez                                                    March 5, 2014

```
 1    nothing to do with the incident.
 2         Q.    So when did you and Deputy Swanson decide
 3    to go there together?  Was it just a
 4    spur-of-the-moment thing?
 5         A.    I don't remember when we decided to go.
 6         Q.    And now that we've been discussing it for
 7    a while, do you remember the tattoo parlor?
 8         A.    No, I do not.
 9         Q.    So basically, this person, the reaper --
10    is he wearing, like, long, flowing robes, like, at
11    least, the image I get of a reaper, with a
12    scythe -- I think that's what it's called?
13              S-c-y-t-h-e, for the record.
14         A.    Yeah, he does have some type of robe, I
15    believe.
16         Q.    How big is this tattoo?
17         A.    I'd say, about 3 or 4 inches.
18         Q.    And is it on the outside or the inside of
19    your left ankle?
20         A.    It's on the inside of my left ankle.
21         Q.    And so, when you are wearing socks, is it
22    covered up?
23         A.    It can be covered up with socks, yes.
24         Q.    And does anybody in the Department know
25    that you've got this tattoo?
```

                                                                76

David Chevez                                                    March 5, 2014

```
 1              MS. MATHERS:  Objection.  Lacks
 2    foundation.
 3         Q.   BY MR. CASSELMAN:  Have any supervisors
 4    seen it, to your knowledge?
 5         A.   I'm sure they did.  I'm sure they have.
 6         Q.   So is there a group of people, called
 7    "The Reapers," who have tattoos and work for the
 8    Sheriff's Department?
 9         A.   I do not -- I don't know if there is a
10    group.
11         Q.   Well, do you have, like, a sign that you
12    give to other "Reapers"?
13         A.   No, there isn't, sir.
14         Q.   Maybe a "scythe" sign, or something?
15         A.   No, there isn't.
16         Q.   Do you have, like, "Reaper" meetings?
17         A.   No, we don't.
18         Q.   Do you have a "Reaper" code or password
19    or anything?
20         A.   No, we don't.
21         Q.   So what do the "Reapers" do, besides get
22    tattoos?
23         A.   Nothing, really.  They are just honest,
24    hard-working, loyal people who are very proud of
25    being members of the station.
```

77

```
 1          Q.   I see.  Well, to your knowledge, have --

 2     did Meza and Munoz get reaper tattoos?

 3          A.   Yes, they do have reaper tattoos.

 4          Q.   Did they get them the same day that you

 5     and Swanson did?

 6          A.   No, they did not.

 7          Q.   Were they involved in a fatal shooting,

 8     like you and Swanson?

 9               MS. MATHERS:  Objection.  This goes to

10     the personnel records of other deputies, that are

11     not a party to this lawsuit.  Violates official

12     information privilege.

13               MR. CASSELMAN:  We also have a Monell

14     allegation.

15               MS. MATHERS:  And I have to remind

16     counsel that the discovery on Monell has been

17     stayed, as the matter has been bifurcated.

18               MR. CASSELMAN:  But it also goes to

19     motive and goes to punitive damages as well as to

20     the individual.  So your record is --

21               MS. MATHERS:  As to Meza and Munoz?

22               MR. CASSELMAN:  No.  These individuals,

23     in this case.

24               MS. MATHERS:  Well, I'm not stopping you

25     from asking questions related to these two
```

78

1   deputies, but I would ask you to refrain from

2   asking questions about other deputies when we have

3   absolutely no protective order in place.

4       Q.   BY MR. CASSELMAN:   Sir, do you know if

5   these other deputies that you mentioned, Munoz and

6   Meza, were involved in officer-involved shootings?

7   You can answer that "yes" or "no."

8            MS. MATHERS:   Same objections.   Also,

9   lacks foundation.

10           But if you know, you may answer.

11           THE DEPONENT:   They've never been

12  involved in a shooting.

13      Q.   BY MR. CASSELMAN:   How do you know that?

14  They told you?

15      A.   Because I've worked with them.

16      Q.   So the days you worked with them, they

17  weren't in a shooting?   Is that your basis for

18  saying that?

19      A.   No.   If someone was involved in a

20  shooting at our station, it's--

21      Q.   Everybody would know about it?

22      A.   It's a big deal.   Everyone knows about

23  it.   People respond to support the shooters,

24  because it's a very traumatic situation.   So

25  everybody responds and shows some type of support.

79

David Chevez                                                    March 5, 2014

 1    All people respond.  Even the captain responds.

 2    Chiefs and commanders respond.  Priests respond.

 3    It's a very traumatic experience, and a lot of

 4    people respond to show support.  So when there is a

 5    deputy-involved shooting, the entire station knows

 6    about it.  Deputy Munoz and Deputy Meza had been

 7    working at South L.A. Station three months prior to

 8    when I arrived, and they have never been involved

 9    in a shooting.

10        Q.   Have they been involved in a homicide?

11             MS. MATHERS:  Objection.  Lacks

12    foundation.  Relevance.  You are asking if they've

13    committed a homicide?

14        Q.   BY MR. CASSELMAN:  Have they been

15    involved in a homicide?  Have they killed anyone?

16             MS. MATHERS:  Objection.  Lacks

17    foundation.  Violates privacy rights of Deputies

18    Meza and Munoz.

19             But if you know, you may answer.

20             THE DEPONENT:  Have they killed anybody

21    how?

22        Q.   BY MR. CASSELMAN:  There are lots of

23    ways, sir.  But to your knowledge, have they killed

24    anyone?

25        A.   No, they haven't, sir.

                                                          80

David Chevez                                                                                    March 5, 2014

```
 1                MR. SHTOFMAN:  And it will be treated as

 2     though he had signed?

 3                MR. CASSELMAN:  And it will be treated as

 4     though he had signed it.

 5                MS. MATHERS:  So stipulated.

 6                MR. CASSELMAN:  Thank you.  Okay.  I'm

 7     ending the --

 8                MS. MATHERS:  And one more thing.  And

 9     the videotape of this proceeding will be provided

10     to counsel?

11                MR. CASSELMAN:  There is no tape, but the

12     recording will be made available.

13                MS. MATHERS:  Thank you for that

14     correction, but yes.

15                MR. CASSELMAN:  Sure.  For the record,

16     end of video.

17                THE REPORTER:  The deposition session is

18     completed.

19        (Deposition session concluded at 2:57 P.M.)

20

21

22

23

24

25
```

158

David Chevez                                                    March 5, 2014

```
 1                 PENALTY OF PERJURY CERTIFICATE

 2

 3        I hereby declare I am the witness in the within

 4     matter, that I have read the foregoing transcript and

 5     know the contents thereof; that I declare that the same

 6     is true to my knowledge, except as to the matters which

 7     are therein stated upon my information or belief, and as

 8     to those matters, I believe them to be true.

 9        I declare being aware of the penalties of perjury,

10     that the foregoing answers are true and correct.

11

12

13

14

15        Executed on the _____ day of _____, ____,

16     at _____, _____.

17            (CITY)                    (STATE)

18

19

20

21        _____

22                   DAVID CHEVEZ

23

24

25

                                                          159
```

David Chevez                                                                                                                    March 5, 2014

```
 1    STATE OF CALIFORNIA         )
                                  )  ss:
 2    COUNTY OF LOS ANGELES       )

 3

 4            I, ELENA C. CHESTER, do hereby certify:

 5            That I am a duly qualified Certified Shorthand

 6    Reporter, in and for the State of California, holder of

 7    certificate number 10274, which is in full force and

 8    effect and that I am authorized to administer oaths and

 9    affirmations;

10            That the foregoing deposition testimony of the

11    herein named witness was taken before me at the time and

12    place herein set forth;

13            That prior to being examined, the witness named

14    in the foregoing deposition, was duly sworn or affirmed

15    by me, to testify the truth, the whole truth, and

16    nothing but the truth;

17            That the testimony of the witness and all

18    objections made at the time of the examination were

19    recorded stenographically by me, and were thereafter

20    transcribed under my direction and supervision;

21            That the foregoing pages contain a full, true

22    and accurate record of the proceedings and testimony to

23    the best of my skill and ability;

24            That prior to the completion of the foregoing

25    deposition, review of the transcript was requested.
```

160

David Chevez                                                            March 5, 2014

 1              I further certify that I am not a relative or

 2       employee or attorney or counsel of any of the parties,

 3       nor am I a relative or employee of such attorney or

 4       counsel, nor am I financially interested in the outcome

 5       of this action.

 6

 7              IN WITNESS WHEREOF, I have subscribed my name

 8       this _____ day of _____, _____.

 9

10

11       _____

12              ELENA C. CHESTER, CSR No. 10274

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                                    161

# EXHIBIT B

David Chevez                                                      March 6, 2014

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3

4

5    N.G. AND L.G., minors, by and    )
     through their Guardian ad Litem, )
6    Lilliana Magallon; SARA PEREZ,   )
                                       )
7              Plaintiffs,             )
                                       )
8         vs.                         ) Case No.
                                       ) CV13-008312-SVW
9    COUNTY OF LOS ANGELES; LEROY      ) (FFMx)
     BACA; DAVID CHEVEZ; LAURENCE      )
10   SWANSON,; and DOES 5-10,          ) Volumes II and III
                                       )
11             Defendants.             )
     _____)

12

13

14

15         VIDEOTAPED DEPOSITION OF DAVID CHEVEZ,

16       taken on behalf of the Plaintiffs, at 4311

17       Wilshire Boulevard, Suite 308, Los Angeles,

18       California, on Thursday, March 6, 2014,

19       beginning at 10:15 A.M. and ending at 3:22

20       P.M., and on Friday, March 7, 2014, beginning

21       at 10:38 A.M. and ending at 10:45 A.M., before

22       Elena C. Chester, Certified Shorthand Reporter

23       Number 10274.

24

25

                                                              164

David Chevez                                                                  March 6, 2014

```
 1      APPEARANCES:

 2

 3    For the Plaintiffs:

 4         LAW OFFICE OF GARY S. CASSELMAN
           GARY S. CASSELMAN, ESQ.
 5         3415 South Sepulveda Boulevard
           Suite 100
 6         Los Angeles, California  90034
           (310) 314-4444
 7         garyscasselman@gmail.com

 8         LAW OFFICES OF SAMUEL OGBOGU
           BY:  SAMUEL OGBOGU, ESQ.
 9         4311 Wilshire Boulevard
           Suite 308
10         Los Angeles, California  90010
           (213) 624-1500
11         sogboguinclaw@aol.com

12

13    For the Defendants:

14         COLLINS COLLINS MUIR + STEWART, LLP
           BY:  CATHERINE M. MATHERS, ESQ.
15         100 El Centro Street
           South Pasadena, California  91030
16         (626) 243-1100
           cmathers@ccmslaw.com

17

18

19    Also Present:

20         DEPUTY LAWRENCE E. SWANSON, JR.

21         EDWARD ORTEGA

22

23

24

25
```

                                                                      165

David Chevez                                                          March 6, 2014

```
 1                           INDEX

 2

 3    DEPONENT

 4    DAVID CHEVEZ

 5    EXAMINATION                                      PAGE

 6            by Mr. Casselman (Volume II)             170

 7            by Mr. Casselman (Volume III)            327

 8

 9

10

11                          EXHIBITS

12    MARKED               DESCRIPTION                 PAGE

13    Exhibit 1A    Deponent's sketch  of the hospital 213
                    room, with additional markings
14

15    Exhibit 4     Photo of baton                     183

16    Exhibit 5     Photo of Deputy Chevez's hands     184

17    Exhibit 6     Photo of hospital room             193

18
      Exhibit 6A    Photo of hospital room, with       211
19                  deponent's markings

20    Exhibit 7     Photo of the hand-drawn diagram,   216
                    with the word "Bathroom" written
21                  in, in red ink

22    Exhibit 8     Side-view and top-view photos of a 227
                    gun
23

24    Exhibit 9     Two photos of Deputy Chevez's      229
                    hands holding a gun
25
```

166

David Chevez                                                    March 6, 2014

```
 1                    EXHIBITS (CONTINUED)

 2      MARKED              DESCRIPTION              PAGE

 3   Exhibit 10    Photo of Deputy Chevez's hand      230
                   holding a gun with his finger on
 4                 the trigger

 5   Exhibit 11    Photo Bates-stamped COLA0214       232

 6   Exhibit 12    Photo Bates-stamped COLA0265       232

 7   Exhibit 13    Photo of Deputy Chevez's fist      238

 8   Exhibit 14    Front-view and side-view photos of 269
                   Deputy Chevez in his Sam Browne
 9                 belt

10   Exhibit 15    Photo Bates-stamped COLA0199       280

11   Exhibit 16    Photo Bates-stamped COLA0228       287

12   Exhibit 17    Photo Bates-stamped COLA0213       287

13   Exhibit 18    Photo Bates-stamped COLA0300       289

14

15

16

17

18        QUESTIONS SUBJECT TO INSTRUCTION NOT TO ANSWER

19                         (None)

20

21

22

23

24

25

                                                      167
```

David Chevez                                                    March 6, 2014

```
1

2

3

4

5

6

7

8

9    *    Non-confidential portions of the transcript.   The

10        confidential portion, pages 303 to 323, are bound

11        and indexed separately.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

168

```
 1                  LOS ANGELES, CALIFORNIA;

 2            THURSDAY, MARCH 6, 2014; 10:15 A.M.

 3

 4            MR. CASSELMAN:  Okay.  We are on the

 5    record, starting video Volume II.  This is a

 6    continuing deposition of David Chevez in the case

 7    of N.G. and L.G. v. County of Los Angeles, et al.,

 8    13-008 -- I'm trying to remember -- thank you --

 9    8312 -- again, CV13-008312.

10            The time is now approximately 10:15 A.M.

11    We are at the law offices of Mr. Ogbogu, at

12    4311 Wilshire Boulevard, Suite 308, in Los Angeles,

13    California.  And this is the continuing deposition

14    of Mr. Chevez, designated Volume II.

15            We'll just have ID for the record, for

16    the audio.

17            Ms. Reporter, starting to my left.

18            THE REPORTER:  Elena Chester, of Network

19    Deposition Services.

20            THE DEPONENT:  David Chevez.

21            MS. MATHERS:  Catie Mathers, on behalf of

22    the defendants.

23            DEPUTY SWANSON:  Lawrence Swanson.

24            MR. OGBOGU:  Samuel Ogbogu, for the

25    plaintiffs.
```

169

1    have you seen a tattoo like that before, that says

2    "Fuck Pigs"?

3        A.   Sir, I see them almost on a daily basis

4    where I work.

5        Q.   Does that -- does that, like, indicate

6    membership in some kind of a group or just

7    unhappiness with police?

8            MS. MATHERS:  Objection.  Lacks

9    foundation.

10           But if you know.

11           THE DEPONENT:  I really don't know.  I

12    would assume that the majority of the people that

13    live in the community where we work are very

14    unhappy with the police.  They have an animosity

15    towards us.  It's very common.

16       Q.   BY MR. CASSELMAN:  Did you see any

17    tattoos on Mr. Gutierrez before you shot him?

18       A.   No.

19       Q.   Did you see any tattoos on him after you

20    shot him?

21       A.   No.

22       Q.   Did you have any tattoos, yourself,

23    before you shot him?

24       A.   No.

25       Q.   And have -- besides the reaper tattoo on

                                                       293

David Chevez                                                    March 6, 2014

 1    the inner aspect of your left ankle, do you have

 2    any other tattoos?

 3         A.    No, I do not.

 4         Q.    And how is it that you -- did you have a

 5    discussion with Deputy Swanson before you both

 6    appeared at that tattoo parlor with other

 7    sheriff's deputies?

 8              MS. MATHERS:   Objection.   Asked and

 9    answered.

10              But go ahead.

11              THE DEPONENT:   No, not really.

12         Q.   BY MR. CASSELMAN:   And were you partners

13    on the day that you went to the tattoo parlor?

14         A.   No, we weren't.

15         Q.   So you were no longer partners at that

16    time?

17         A.   We weren't.

18         Q.   When did you stop partnering with

19    Deputy Swanson?

20         A.   I believe it was that night -- of the

21    incident.

22         Q.   Do you know why?

23         A.   I was assigned to a desk, so I wasn't

24    patrolling anymore.

25         Q.   Why were you assigned to a desk?

                                                            294

David Chevez                                                                    March 7, 2014

1                           "MR. CASSELMAN:   Thank you.   Okay.

2                  I'm ending the --"

3                           "MS. MATHERS:   And one more thing.

4                  And the videotape of this proceeding will

5                  be provided to counsel?"

6                           "MR. CASSELMAN:   There is no tape,

7                  but the recording will be made

8                  available."

9                           "MS. MATHERS:   Thank you for that

10                 correction, but yes."

11                          "MR. CASSELMAN:   Sure.")

12                 THE REPORTER:   Now the deposition is

13        completed?

14                 MR. CASSELMAN:   All right.   This

15        deposition is completed subject to our discussion

16        about the tattoos.

17                 MS. MATHERS:   Yes.

18                 THE REPORTER:   The deposition is

19        completed.

20                 (Deposition concluded at 10:45 A.M.)

21

22

23

24

25

                                                                    334

David Chevez                                                    March 7, 2014

```
 1              PENALTY OF PERJURY CERTIFICATE

 2

 3       I hereby declare I am the witness in the within

 4  matter, that I have read the foregoing transcript and

 5  know the contents thereof; that I declare that the same

 6  is true to my knowledge, except as to the matters which

 7  are therein stated upon my information or belief, and as

 8  to those matters, I believe them to be true.

 9       I declare being aware of the penalties of perjury,

10  that the foregoing answers are true and correct.

11

12

13

14

15       Executed on the _____ day of _____, _____,

16  at _____, _____.

17              (CITY)                    (STATE)

18

19

20

21       _____

22                    DAVID CHEVEZ

23

24

25

                                                           335
```

David Chevez                                                    March 7, 2014

```
 1    STATE OF CALIFORNIA        )
                                 )  ss:
 2    COUNTY OF LOS ANGELES      )

 3

 4          I, ELENA C. CHESTER, do hereby certify:

 5          That I am a duly qualified Certified Shorthand

 6    Reporter, in and for the State of California, holder of

 7    certificate number 10274, which is in full force and

 8    effect and that I am authorized to administer oaths and

 9    affirmations;

10          That the foregoing deposition testimony of the

11    herein named witness was taken before me at the time and

12    place herein set forth;

13          That prior to being examined, the witness named

14    in the foregoing deposition, was duly sworn or affirmed

15    by me, to testify the truth, the whole truth, and

16    nothing but the truth;

17          That the testimony of the witness and all

18    objections made at the time of the examination were

19    recorded stenographically by me, and were thereafter

20    transcribed under my direction and supervision;

21          That the foregoing pages contain a full, true

22    and accurate record of the proceedings and testimony to

23    the best of my skill and ability;

24          That prior to the completion of the foregoing

25    deposition, review of the transcript was requested.
```

336

David Chevez                                                    March 7, 2014

1           I further certify that I am not a relative or

2    employee or attorney or counsel of any of the parties,

3    nor am I a relative or employee of such attorney or

4    counsel, nor am I financially interested in the outcome

5    of this action.

6

7           IN WITNESS WHEREOF, I have subscribed my name

8    this _____ day of _____, _____.

9

10

11           _____

12           ELENA C. CHESTER, CSR No. 10274

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                          337

# EXHIBIT C

Lawrence E. Swanson, Jr.                                                    March 7, 2014

```
 1                UNITED STATES DISTRICT COURT

 2               CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5   N.G. AND L.G., minors, by    )
     and through their Guardian   )
 6   ad Litem, Lilliana Magallon; )
     SARA PEREZ,                   )
 7                                 )
                  Plaintiffs,      )
 8                                 )
          vs.                      )   Case No.
 9                                 )   CV13-008312-SVW (FFMx)
     COUNTY OF LOS ANGELES; LEROY  )
10   BACA; DAVID CHEVEZ; LAURENCE  )   Volume II
     SWANSON,; and DOES 5-10,      )
11                                 )
                  Defendants.      )
12   _____)

13

14

15

16     VIDEOTAPED DEPOSITION OF LAWRENCE E. SWANSON, JR.

17                 Los Angeles, California

18                 Friday, March 7, 2014

19

20

21

22

23

24   Reported by:  Elena C. Chester
                   CSR No. 10274
25   NDS Job No.:  161088
```

74

Lawrence E. Swanson, Jr.                                                      March 7, 2014

```
 1                  UNITED STATES DISTRICT COURT

 2               CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5   N.G. AND L.G., minors, by    )
     and through their Guardian   )
 6   ad Litem, Lilliana Magallon; )
     SARA PEREZ,                   )
 7                                 )
                    Plaintiffs,    )
 8                                 )
          vs.                      )  Case No.
 9                                 )  CV13-008312-SVW (FFMx)
     COUNTY OF LOS ANGELES; LEROY  )
10   BACA; DAVID CHEVEZ; LAURENCE  )  Volume II
     SWANSON,; and DOES 5-10,      )
11                                 )
                    Defendants.    )
12   _____)

13

14

15

16      VIDEOTAPED DEPOSITION OF LAWRENCE E. SWANSON, JR.,

17     taken on behalf of the Plaintiffs, at 4311 Wilshire

18     Boulevard, Suite 308, Los Angeles, California, on

19     Friday, March 7, 2014, beginning at 10:50 a.m. and

20     ending at 4:20 p.m., before Elena C. Chester, CSR

21     No. 10274.

22

23

24

25
```

75

Lawrence E. Swanson, Jr.                                                    March 7, 2014

```
 1    APPEARANCES:

 2

 3    For the Plaintiffs:

 4        LAW OFFICES OF GARY S. CASSELMAN
          BY:  GARY S. CASSELMAN, ESQ.
 5        3415 South Sepulveda Boulevard
          Suite 100
 6        Los Angeles, California  90034
          (310) 314-4444
 7        garyscasselman@gmail.com

 8

          LAW OFFICES OF SAMUEL OGBOGU
 9        BY:  SAMUEL OGBOGU, ESQ.
          4311 Wilshire Boulevard
10        Suite 308
          Los Angeles, California  90010
11        (213) 624-1500
          sogboguinclaw@aol.com
12

13        LAW OFFICES OF ROBERT S. SHTOFMAN
          BY:  ROBERT S. SHTOFMAN, ESQ.
14        18034 Ventura Boulevard
          Suite 296
15        Encino, California  91316
          (818) 609-0090
16        RShtofman@gmail.com

17

18    For the Defendants:

19        COLLINS COLLINS MUIR + STEWART, LLP
          BY:  CATHERINE M. MATHERS, ESQ.
20        1100 El Centro Street
          South Pasadena, California  91030
21        (626) 243-1100
          cmathers@ccmslaw.com
22

23    Also Present:

24        DEPUTY DAVID CHEVEZ

25
```

76

Lawrence E. Swanson, Jr.                                                    March 7, 2014

```
 1                          INDEX

 2

 3    WITNESS

 4    LAWRENCE E. SWANSON, JR.

 5    EXAMINATION                                      PAGE

 6        BY MR. CASSELMAN                              80

 7

 8

 9                         EXHIBITS

10    MARKED                 DESCRIPTION              PAGE

11    Exhibit 22   Cover page and page 15 from the    101
                   certified transcript of the
12                 10/18/12 interview of Deputy
                   Swanson
13
      Exhibit 23   Photo Bates-stamped COLA0338       112
14
      Exhibit 24   Photo Bates-stamped COLA0197       122
15
      Exhibit 25   Photo Bates-stamped COLA0229       127
16
      Exhibit 26   Photo Bates-stamped COLA0200       138
17
      Exhibit 27   Photo Bates-stamped COLA0204       153
18
      Exhibit 28   Photo Bates-stamped COLA0264       153
19
      Exhibit 29   Photo Bates-stamped COLA0317       185
20
      Exhibit 30   Photo Bates-stamped COLA0318       187
21
      Exhibit 31   Photo Bates-stamped COLA0405       188
22
      Exhibit 32   Photo Bates-stamped COLA0216       192
23
      Exhibit 33   Photo of Deputy Swanson with his   217
24                 hands in front of him

25    Exhibit 34   Photo Bates-stamped COLA0198       217
```

77

Lawrence E. Swanson, Jr.                                          March 7, 2014

1                     PREVIOUSLY MARKED EXHIBITS

2                       (FOR REFERENCE ONLY)

3               EXHIBITS     FIRST REFERENCED

4                    6A            121

5

6

7                     QUESTIONS WITNESS

8               INSTRUCTED NOT TO ANSWER

9                         (None)

10

11

12               INFORMATION REQUESTED

13                    PAGE     LINE

14                    164        2

15                    175       12

16

17

18

19

20

21

22

23

24

25

                                                              78

Lawrence E. Swanson, Jr.                                                                                                    March 7, 2014

```
 1                    LOS ANGELES, CALIFORNIA;

 2                 FRIDAY, MARCH 7, 2014; 10:50 A.M.

 3

 4              MR. CASSELMAN:  Okay.  This is Volume II

 5    of the deposition of Deputy Lawrence Swanson.  This

 6    is March 7, 2014.  We are at 4311 Wilshire

 7    Boulevard, Suite 308, Law Offices of Samuel Ogbogu.

 8              And my name is Gary Casselman.  This is

 9    the continuing deposition in N.G. and L.G., et al.,

10    v. County of Los Angeles, et al.;

11    Case No. CV13-008312-SVW (FFMx).

12              We'll just have a quick audio (sic).

13              Ms. Reporter.

14              THE REPORTER:  Elena Chester, for Network

15    Deposition Services.

16              MR. CASSELMAN:  Gary Casselman.  I'm the

17    videographer and co-counsel.

18              MR. OGBOGU:  Samuel Ogbogu.

19              DEPUTY CHEVEZ:  David Chevez.

20              MS. MATHERS:  Catie Mathers, on behalf of

21    the defendants.

22              THE DEPONENT:  And Lawrence Swanson.

23              MR. CASSELMAN:  Thank you.

24    ///

25    ///
```

79

Lawrence E. Swanson, Jr.                                          March 7, 2014

1          A.    Deputy Chevez.

2          Q.    Now, when, in time, did you learn that

3     the criminal investigation was concluded?

4          A.    I -- I can't give you the exact date or

5     month.  I think it was at the end of the summer of

6     2013 -- be my best estimate -- but I'm not certain.

7          Q.    And -- so that would be like --

8                (Telephonic interruption.)

9          Q.    BY MR. CASSELMAN:   -- August, September

10    something?

11         A.    I believe so.

12         Q.    And when in relation to the incident or

13    the end of summer 2013 did you and Deputy Chevez

14    and anyone else go to get a tattoo at that place

15    where you all showed up?

16         A.    Sometime around March or April.

17         Q.    Of?

18         A.    2013.

19         Q.    Why did you want to get a tattoo of --

20    well, first of all, what is the tattoo that you

21    got?

22         A.    It's a tattoo of a reaper.

23              MS. MATHERS:   Let me just, for this

24    entire section, object on violation of privacy.

25    But go ahead and answer your -- ask your

                                                            165

Lawrence E. Swanson, Jr.                                                    March 7, 2014

```
 1    questions.

 2              MR. CASSELMAN:   So noted.

 3              MS. MATHERS:   And relevancy.   Sorry.

 4         Q.   BY MR. CASSELMAN:   And what does the

 5    tattoo look like?

 6         A.   Looks like a -- like a skeleton, with a

 7    robe, holding a -- I don't know what the tool's

 8    called.

 9         Q.   A scythe?

10         A.   Scythe, yeah.   That curved blade?

11         Q.   Right.   With a long handle or a short

12    handle?

13         A.   I guess, a long handle.

14         Q.   And is this tattoo in color, or is it

15    just all black and white or just one color?

16         A.   Just all one color.

17         Q.   That greenish color that tattoos have

18    that aren't otherwise colored?

19         A.   Correct.

20         Q.   And does that show -- what was the reason

21    you decided to get that tattoo?

22         A.   I just -- I've always wanted a station

23    tattoo.   Station tattoos are pretty prominent on

24    (sic) the Department.   And just to show pride in

25    where you work.
```

166

Lawrence E. Swanson, Jr.                                    March 7, 2014

1        Q.    So you worked in the jail before you

2    worked at the station; right?

3        A.    Correct.

4        Q.    Did you want to get a tattoo to show

5    pride in your assignment at the jail?

6        A.    No, sir.  I wanted to show pride in being

7    a law-enforcement officer in the field, so I didn't

8    get one for the jails.

9        Q.    After you left the jail -- well, when you

10   left the jail assignment, what year was it?

11       A.    2010.

12       Q.    What month?

13       A.    I think, March or April.

14       Q.    And what was your first assignment from

15   (sic) leaving the jail?

16       A.    Patrol at Lenox Station.

17       Q.    And were you at Men's Central, North

18   County, or somewhere else?

19       A.    Men's Central Jail.

20       Q.    And what's the mascot for Lenox?

21       A.    A reaper.

22       Q.    So is South Los Angeles and Lenox -- are

23   those synonymous?

24       A.    Yes, sir.  We just changed names and

25   changed buildings.

                                                          167

Lawrence E. Swanson, Jr.                                           March 7, 2014

1          Q.    And are you saying that everybody at

2    Lenox who is a deputy has a reaper tattoo, to your

3    knowledge?

4          A.    No.

5          Q.    And when did you arrive at the Lenox, or

6    South L.A., station?

7          A.    In March or April of 2010.

8          Q.    So upon leaving the jail, you were

9    immediately assigned to Lenox?

10          A.    Correct.

11          Q.    So -- and -- so approximately

12    three-years-plus later, you decided to get the

13    reaper tattoo?

14          A.    Yes.

15          Q.    Why then?

16          A.    No specific reasoning.  We are -- been in

17    the field for a few years and felt proud of being

18    able to work there for as long as I have.  That's

19    all.  Just station pride.

20          Q.    So how long after the incident was it

21    that you decided to get the reaper tattoo?

22               MS. MATHERS:  Objection.  Asked and

23    answered.

24          Q.    BY MR. CASSELMAN:  Well, the incident was

25    in October; right?

                                                          168

Lawrence E. Swanson, Jr.                                    March 7, 2014

 1        A.    Correct.

 2        Q.    And you got it in March or April, so

 3   roughly six months later?

 4        A.    Correct.

 5        Q.    And how is it that you all went to the

 6   same place, on the same date, at the same time, to

 7   get tattoos?   You and Chevez and the other two:

 8   Munoz and whoever the fourth one was?

 9        A.    I don't know.   It's something we just

10   decided to do.

11        Q.    So on a spur of the moment:   "Hey, let's

12   go get a reaper tattoo"?

13        A.    Yeah.   Something that we talked -- they

14   wanted a tattoo, and I like tattoos, so we decided

15   to go get tattoos.

16        Q.    Do you have other tattoos?

17        A.    Yes, sir.

18        Q.    What other tattoos do you have?

19        A.    I have a Roman soldier.   I have a Native

20   American symbol.   I have a couple -- or a few

21   lizards, three lizards.

22        Q.    The Native American symbol -- is that the

23   swastika?

24        A.    No, sir.

25        Q.    That was, originally, a Native American

                                                         169

Lawrence E. Swanson, Jr.                                    March 7, 2014

1    symbol.   And you have some lizards?

2         A.   Yes, sir.

3         Q.   And any particular reason you have

4    lizards?   Is that associated with showing pride at

5    the Sheriff's Department?

6         A.   It has to do with my family, sir.

7         Q.   Okay.   So the lizard is a family-type

8    tattoo?

9         A.   Yes.

10        Q.   Explain that, please.

11        A.   There is three lizards.   And my father

12   referred to me and my brother and him as

13   "California Lizards" because we like to lay out in

14   the sun and do things outdoors together, as a

15   family.   And so I got three lizard tattoos -- three

16   lizards together -- to represent me and my dad and

17   my brother.

18        Q.   What is the Native American tattoo that

19   you have?

20        A.   It's a symbol called "A Man in a Maze."

21        Q.   Where did you get your reaper tattoo?   In

22   other words, what part of your body?

23        A.   On my left leg.

24        Q.   On the inside --

25        A.   Yes.

170

Lawrence E. Swanson, Jr.                                          March 7, 2014

1         Q.    -- of your -- by your ankle?

2         A.    Yes.

3         Q.    Is it below the ankle bone or above?  You

4    know the part that sticks out of your ankle bone?

5    Is it above that?

6         A.    I don't understand.

7         Q.    Well, you know, right above where your

8    shoe ends, there is kind of a protruding bone for

9    your ankle?

10        A.    The joint?

11        Q.    Yes.

12        A.    Yes, sir.

13        Q.    Is it above that?

14        A.    Yes.

15        Q.    And you are proud of that -- to show

16   solidarity with your fellow Lenox or South

17   Los Angeles deputy sheriffs?

18        A.    It's not to show solidarity with them.

19   It's more just a pride thing with me.

20        Q.    All right.  Does it have a number on

21   it?

22        A.    Yes.

23        Q.    And what's your number?

24        A.    97.

25        Q.    And what does that signify:  the number

                                                              171

Lawrence E. Swanson, Jr.                                      March 7, 2014

 1   "97"?

 2          A.   I think that means I'm the 97th person to

 3   get the tattoo.

 4          Q.   So I think we heard that Deputy Chevez

 5   was 96.  So you got your tattoo after he got his?

 6          A.   Yes.

 7          Q.   And the two others -- were they before

 8   you two or after you two?

 9          A.   Before.

10          Q.   So they are probably 95 and 94?

11          A.   I'm actually not certain.

12          Q.   And they all got their tattoos on the

13   same location and of the same reaper?

14          A.   On the same location of their body?

15          Q.   Yes.

16          A.   Yes.

17          Q.   And it was the same design?

18          A.   Same basic design, yes.

19          Q.   How much did it cost for this reaper

20   tattoo?

21              MS. MATHERS:  Objection.  Relevance.

22          Q.   BY MR. CASSELMAN:  You can answer.

23          A.   $200.

24          Q.   And what time of the day was it that you

25   went down there?

                                                          172

Lawrence E. Swanson, Jr.                                      March 7, 2014

1          A.   I don't -- I don't remember.  I don't

2     recall.

3          Q.   Well, was it daytime or nighttime?

4          A.   I honestly don't recall, sir.

5          Q.   Did you go before or after or during your

6     shift?

7          A.   I was not on duty.

8          Q.   Were the others?

9          A.   No.

10         Q.   Were you in a County vehicle?

11         A.   No.

12         Q.   And was the person who owns the shop a

13    current or former member of the Sheriff's

14    Department or any other police agency?

15         A.   I don't know who owns the shop.

16         Q.   How long after the shooting of

17    Mr. Gutierrez were you interviewed?

18              MS. MATHERS:  You are asking about

19    Homicide investigators?

20              MR. CASSELMAN:  Right.  The Sheriff's

21    people.

22              THE DEPONENT:  Several hours.  Five or

23    six hours.  I'm not exactly certain.

24         Q.   BY MR. CASSELMAN:  Where were you from

25    the time of the shooting until the time of your

                                                      173

Lawrence E. Swanson, Jr.                                      March 7, 2014

```
 1          A.   I heard a loud noise when Mr. Gutierrez

 2    leaped off the bed and yanked his arm on the bed

 3    rail of the bed, causing the bed to move.

 4          Q.   So you saw the bed move?

 5          A.   Yes.

 6          Q.   How did the bed move?

 7          A.   It kind of moved up.  Like -- like, the

 8    wheels came off the ground, shortly (sic); and then

 9    it moved closer in my direction.

10          Q.   How much did it move?

11          A.   I'm not certain.

12          Q.   Did you have any discussion, while you

13    were at the tattoo parlor, about the incident?

14          A.   No.

15          Q.   Did you -- were you ever on the -- apart

16    from your feet, was any part of your body on the

17    floor of the -- Room 12, that you and Mr. Gutierrez

18    occupied that evening?

19          A.   No.

20          Q.   And were you ever on the ground,

21    struggling with Mr. Gutierrez on the floor?

22          A.   No.

23          Q.   And was Deputy Chevez ever on the ground,

24    struggling with Mr. Gutierrez?

25          A.   No.
```

178

Lawrence E. Swanson, Jr.                                          March 7, 2014

1   stipulated.

2           THE REPORTER:  Counsel, for the record,

3   would you like a copy of this one?

4           MS. MATHERS:  I would, please.

5           THE REPORTER:  The deposition is

6   completed.

7           (Deposition concluded at 4:20 P.M.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

232

Lawrence E. Swanson, Jr.                                        March 7, 2014

```
1              PENALTY OF PERJURY CERTIFICATE

2

3        I hereby declare I am the witness in the within

4   matter, that I have read the foregoing transcript and

5   know the contents thereof; that I declare that the same

6   is true to my knowledge, except as to the matters which

7   are therein stated upon my information or belief, and as

8   to those matters, I believe them to be true.

9        I declare being aware of the penalties of perjury,

10  that the foregoing answers are true and correct.

11

12

13

14

15       Executed on the _____ day of _____, _____,

16   at _____, _____.

17             (CITY)                        (STATE)

18

19

20

21        _____

22               LAWRENCE E. SWANSON, JR.

23

24

25
```

233

Lawrence E. Swanson, Jr.                                          March 7, 2014

1   STATE OF CALIFORNIA          )
                                 )  ss:
2   COUNTY OF LOS ANGELES        )

3

4           I, ELENA C. CHESTER, do hereby certify:

5           That I am a duly qualified Certified Shorthand

6   Reporter, in and for the State of California, holder of

7   certificate number 10274, which is in full force and

8   effect and that I am authorized to administer oaths and

9   affirmations;

10          That the foregoing deposition testimony of the

11  herein named witness was taken before me at the time and

12  place herein set forth;

13          That prior to being examined, the witness named

14  in the foregoing deposition, was duly sworn or affirmed

15  by me, to testify the truth, the whole truth, and

16  nothing but the truth;

17          That the testimony of the witness and all

18  objections made at the time of the examination were

19  recorded stenographically by me, and were thereafter

20  transcribed under my direction and supervision;

21          That the foregoing pages contain a full, true

22  and accurate record of the proceedings and testimony to

23  the best of my skill and ability;

24          That prior to the completion of the foregoing

25  deposition, review of the transcript was requested.

234

Lawrence E. Swanson, Jr.                                          March 7, 2014

1            I further certify that I am not a relative or

2    employee or attorney or counsel of any of the parties,

3    nor am I a relative or employee of such attorney or

4    counsel, nor am I financially interested in the outcome

5    of this action.

6

7            IN WITNESS WHEREOF, I have subscribed my name

8    this _____ day of _____, _____.

9

10

11         _____

12         ELENA C. CHESTER, CSR No. 10274

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                            235