1  Samuel O. Ogbogu, Esq. (#156427)      Robert S. Shtofman, Esq. (#135577)
   SAMUEL OGBOGU, INC.                    Law Ofc Robert S. Shtofman
2  4311 Wilshire Boulevard, Suite         18150 Chardon Cir.
   308                                    Encino, CA 91316
3  Los Angeles, CA 90010                  Tel. (818) 609-0090
   Telephone: (213) 624-1500              Fax (818) 609-1977
4  Facsimile: (213) 802-2946              RShtofman@gmail.com
   sogboguinclaw@aol.com
5
   Gary S. Casselman, Esq. (#81658)
6  CASSELMAN LAW OFFICES
   3415 S. Sepulveda Blvd., Suite 100
7  Los Angeles, CA 90034
   Tel. (310) 314-4444 Fax: (310) 314-4447
8  garyscasselman@gmail.com
9
10 Attorneys for Plaintiffs
11
                    UNITED STATES DISTRICT COURT
12
                   CENTRAL DISTRICT OF CALIFORNIA
13
14
   N.G. AND L.G., minors, by and      ) Case No.: CV13-008312-SVW
15 through their Guardian ad          ) (FFMx)
   Litem, Lilliana Magallon; SARA     )
16 PEREZ.                             ) PLAINTIFFS' OPPOSITION TO
                                      ) DEFENDANTS' MOTION IN
17                                    ) LIMINE NO. 1 TO EXCLUDE
   Plaintiffs,                        ) EVIDENCE OF DEPUTY
18                                    ) TATTOOS; DECLARATION OF
   vs.                                ) SAMUEL OGBOGU.
19                                    )
   COUNTY OF LOS ANGELES;             )
20 LEROY BACA, DAVID                  )
   CHEVEZ, LAURENCE                   )
21 SWANSON, DOES 5 – 10.              )
                                      )
22           Defendants               )
                                      )
23 _____   )
24
          Plaintiffs hereby oppose Defendants' Motion in Limine No. 1 to
25
   exclude evidence of Deputy tattoos. It is significant that the defendants
26
   filed an opposition to plaintiffs motion in limine to preclude any
27
   reference to decedent's tattoo, but now seeks this court to exclude
28

1 reference to tattoos taken by the two deputies involved in this shooting.

2
3                              INTRODUCTION
4

5        Jilberto Gutierrez was stopped by officers who claimed that he was
6 looking at the window of a parked car. Jilberto Gutierrez who indicated
7 that he was simply looking at himself in the window of a parked car was
8 nonetheless detained, searched and arrested by the deputies on a charge
9 of possession of Methamphetamine. He was taken to the South Los
10 Angeles Sheriff's station and was later transported to Centinela
11 Hospital due to complaint of chest pain.

12       On August 18, 2012 at approximately 1:00 a.m., while *unarmed*
13 and with his left hand handcuffed to a hospital gurney, Jilberto
14 Gutierrez was shot to death by Deputy David Chevez. Deputy Lawrence
15 Swanson was present at the time of this shooting and less than a
16 minute prior to the shooting, Deputy Swanson stood by and observed
17 Deputy Chevez strike the decedent to the head for no just cause. Despite
18 deposition testimonies of independent hospital staff witnesses to the
19 contrary and despite the pathologists indication that the bullet pathway
20 is inconsistent with the deputies account of the incident, Deputies
21 Swanson and Chevez stuck to their script that the shooting was
22 precipitated by a violent struggle for Deputy Swanson's gun which
23 ended with the fatal shooting of Gutierrez after he leaped from the
24 hospital bed, while still handcuffed, and charged at Swanson to
25 disposess him of his gun.

26       In March 2013, subsequent to the shooting, Deputies Chevez and
27 Swanson went to tattoo shop and had a tattoo of a grim reaper with the
28 symbol of death, tattoed to their respective ankles. In their deposition

                                       2

1  testimony, Deputies Chevez and Swanson testified that the tattoo
2  signified "pride".

3       Notwithstanding their contradictory contention in opposing
4  plaintiff's motion to exclude evidence of decedent's tattoo, Defendants
5  now seek to exclude the evidence of this tattoo on the basis that the
6  tattoos are irrelevant to the issues and would be unduly prejudicial to
7  defendants. It is Plaintiffs' contention that evidence that the defendant
8  deputies obtained a *tattoo bearing the symbol of death* obtained months
9  after the shooting death of Jilberto Gutierrez is relevant in the
10  determination of whether there was a "purpose to harm" decedent as
11  opposed to a legitimate law enforcement purpose. *FRE 401* -403.

12

13       DEPUTIES SELF-SERVING STATEMENT THAT THE
14       TATTOO WAS OBTAINED AS A SHOW OF "PRIDE" IN THEIR
15       STATION DOES NOT MAKE THE TESTIMONY IRRELEVANT

16       Deputies Chevez and Swanson testified that the reaper tattoo
17  depicts a symbol of death. While the deputies may argue that the
18  symbol of death tattoo taken months of the shooting of Jilberto
19  Gutierrez was a coincidence, a jury can infer otherwise. The credibility
20  of their explanation as to the what the tattoo represents, why they
21  obtained the tattoos, where they obtained the tattoos and the
22  circumstances that led to their getting the tattoo are issues left for the
23  determination of the jury.

24       In their deposition testimonies, the deputies testified as follows:

25

26       16    A.  I have a tattoo on my ankle.

27       17    Q.  And what is it of?

28       18    A.  It's a tattoo of a reaper.

3

19    Q.  Like a Grim Reaper?

20    A.  Like a Grim Reaper, yes.

21    Q.  And which ankle is it, sir?

22    A.  It's on my left ankle.

23    Q.  And does it have a number?

24    A.  Yes, it does.

25    Q.  What's the number?

1    A.  96.

2    Q.  And when did you receive it?

3    A.  It would be sometime last year.

4    Q.  After the shooting?

5    A.  Yes, it was.

6    Q.  And what would be the date that you got

7        it?

8    A.  I really don't know the date.

*See Declaration of Samuel Ogbogu ¶2 (Deposition of Deputy Chevez Vol. 1 pages 64-65).*

THE DEPONENT:  That -- it's a reaper --

2  tattoo of the reaper.

3    Q.  BY MR. CASSELMAN:  Well, what -- describe

4  what that is.  I mean, I have my own idea, but I

5  don't want to leave it up in the air, for anybody

6  to make their own conclusions.

7    A.  It's a tattoo of a reaper holding a --

8    Q.  Thing with -- a long curvy thing, with a

9  big staff?

4

10      A.  Yes.

11      Q.  That's, like -- that's, like, the symbol

12  for death, isn't it -- the reaper?

13          MS. MATHERS:  Objection.  Lacks

14  foundation.

15          If you know, you may answer.

16          THE DEPONENT:  I know it -- I've known it

17  to be a symbol for death.  That's not the only

18  symbol for it, but yeah, it's a symbol of death.

See Declaration of Samuel Ogbogu ¶2 (Deposition of Deputy Chevez Vol. 1 page 75).

There is nothing in the moving paper that in anyway suggests how this evidence is unduly prejudicial. The jury is allowed to determine the what weight to attach to this evidence and what credibility to attach to the explanation of the deputies as to why they got a grim reaper tattoo with death symbol after the shooting death of Gutierrez.

## TO THE EXTENT THAT THE DEFENSE BELIEVES  THAT EVIDENCE OF DECEDENT'S TATTOO IS RELEVANT AND ADMISSIBLE, PLAINTIFFS ARE EQUALLY ENTITLED TO THE SAME ARGUMENT, INCLUDING THE  DEFENDANTS' 'MOTIVE TO HARM.

Notwithstanding the provisions of FRE 403 and 404, Defendants argue that "The decedent's tattoos are probative of bias, opportunity, and motive, as well relevant to the quantum of recoverable damages. FRE 401".

That scenario is however different from the deputies tattoos. The deputies

1 | tattoo taken after the shooting indicates evidence of their state of mind during and
2 | post shooting. Getting a tattoo with symbol of death cannot be reasonably seen as a
3 | way of showing "pride" in a law enforcement organization and a jury's function is
4 | to weight credibility and weight of evidence. Defendants have failed to advance
5 | any argument as to why this evidence should not be admitted. Evidence is not
6 | disallowed because it is prejudicial. The defense has the burden to show *"undue*
7 | *prejudice"* and they have failed to make the showing.

8 |        Based on the foregoing, the defendants' motion to exclude the deputies grim
9 | reaper tattoo symbolizing death taken after the shooting death of Gutierrez should
10 | be denied.

12 | DATED:    July 16, 2014

Respectfully submitted,

By

Gary S. Casselman, Esq.
Robert Scott Shtofman, Esq.
Samuel O. Ogbogu, Esq.
Attorneys for Plaintiffs,
N.G. and L.G., minors, by and
through their Guardian ad
Litem, Lilliana Magallon, and
SARA PEREZ

6

## DECLARATION OF SAMUEL OGBOGU

I,   Samuel O. Ogbogu, declare as follows:

1. I am an attorney at law duly licensed to practice before all of the Courts of the State of California.  I, along with attorney Robert Shtofman and Gary Casselman, are the attorneys of record for plaintiff, Plaintiffs, N.G., L.G. and Sara Perez in this action.  As such, I am familiar with the facts of this matter and if called upon as a witness I could and would competently testify to the following facts of my own personal knowledge.

2. Attached as Exhibit "A" to this declaration are excerpts from the deposition of Deputy Chevez, Vol. 1 taken on March 5, 2014 to which I was present as counsel.

3. This declaration is made in support of plaintiffs' opposition to defendants' motion in limine No. 1.

I declare under penalty of perjury under the Laws of the State of California and the United States of America that the foregoing is true and correct this 15th day July 2014 at Los Angeles, California.

_____
Samuel O. Ogbogu, Esq.

7

EXHIBIT "A"

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3

4

5    N.G. AND L.G., minors, by and      )
     through their Guardian ad Litem,   )
6    Lilliana Magallon; SARA PEREZ,     )
                                        )
7              Plaintiffs,              )
                                        )
8         vs.                           ) Case No.
                                        ) CV13-008312-SVW
9    COUNTY OF LOS ANGELES; LEROY       ) (FFMx)
     BACA; DAVID CHEVEZ; LAURENCE       )
10   SWANSON,; and DOES 5-10,           ) Volume I
                                        )
11             Defendants.              )
     _____)

12

13

14

15          VIDEOTAPED DEPOSITION OF DAVID CHEVEZ

16                  Los Angeles, California

17                 Wednesday, March 5, 2014

18

19

20

21

22

23

24   Reported by:  Elena C. Chester
                   CSR No. 10274
25   NDS Job No.:  161028

                                                            1

```
 1              UNITED STATES DISTRICT COURT

 2             CENTRAL DISTRICT OF CALIFORNIA

 3

 4

 5    N.G. AND L.G., minors, by and      )
      through their Guardian ad Litem,   )
 6    Lilliana Magallon; SARA PEREZ,     )
                                         )
 7             Plaintiffs,               )
                                         )
 8         vs.                           )  Case No.
                                         )  CV13-008312-SVW
 9    COUNTY OF LOS ANGELES; LEROY       )  (FFMx)
      BACA; DAVID CHEVEZ; LAURENCE       )
10    SWANSON,; and DOES 5-10,           )  Volume I
                                         )
11             Defendants.               )
      _____)

12

13

14

15         VIDEOTAPED DEPOSITION OF DAVID CHEVEZ,

16      taken on behalf of the Plaintiffs, at 4311

17      Wilshire Boulevard, Suite 308, Los Angeles,

18      California, on Wednesday, March 5, 2014,

19      beginning at 10:30 A.M. and ending at 2:57 P.M.,

20      before Elena C. Chester, Certified Shorthand

21      Reporter Number 10274.

22

23

24

25
                                                         2
```

David Chevez                                                                    March 5, 2014

```
 1     APPEARANCES:

 2

 3     For the Plaintiffs:

 4          LAW OFFICE OF GARY S. CASSELMAN
            GARY S. CASSELMAN, ESQ.
 5          3415 South Sepulveda Boulevard
            Suite 100
 6          Los Angeles, California  90034
            (310) 314-4444
 7          garyscasselman@gmail.com

 8          LAW OFFICES OF SAMUEL OGBOGU
            BY:  SAMUEL OGBOGU, ESQ.
 9          4311 Wilshire Boulevard
            Suite 308
10          Los Angeles, California  90010
            (213) 624-1500
11          sogboguinclaw@aol.com

12          LAW OFFICE OF ROBERT S. SHTOFMAN
            ROBERT S. SHTOFMAN, ESQ.
13          18034 Ventura Boulevard
            Suite 296
14          Encino, California  91316
            (818) 609-0090
15

16

17     For the Defendants:

18          COLLINS COLLINS MUIR + STEWART, LLP
            BY:  CATHERINE M. MATHERS, ESQ.
19          100 El Centro Street
            South Pasadena, California  91030
20          (626) 243-1100
            cmathers@ccmslaw.com
21

22

23     Also Present:

24          DEPUTY LAWRENCE E. SWANSON, JR.

25
```

3

David Chevez                                                                      March 5, 2014

```
 1                              INDEX

 2   DEPONENT

 3   DAVID CHEVEZ

 4   EXAMINATION                                    PAGE

 5        By Mr. Casselman                            6

 6

 7

 8

 9                            EXHIBITS

10   MARKED                 DESCRIPTION             PAGE

11   Exhibit 1    Deponent's sketch  of the hospital  110
                  room
12

13   Exhibit 2    Side-view photo of Deputy Chevez,   151
                  standing/leaning position
14

15   Exhibit 3    Front-view photo of Deputy Chevez,  152
                  standing/leaning position
16

17

18

19        QUESTIONS SUBJECT TO INSTRUCTION NOT TO ANSWER

20                           (None)

21

22

23              INFORMATION REQUESTED

24                           (None)

25
```

4

 1                 LOS ANGELES, CALIFORNIA;

 2         WEDNESDAY, MARCH 5, 2014; 10:30 A.M.

 3

 4             MR. CASSELMAN:  Good morning.  Today is

 5     March 5, 2014.  We are here, in the office of

 6     Mr. Ogbogu.  And that's at 4311 Wilshire Boulevard,

 7     Suite 308, Los Angeles, California.  And this is

 8     the deposition of David Chevez, C-h-e-v-e-z.  And

 9     this is the case of N.G. and L.G., et al., v.

10     County of Los Angeles, et al.; in U.S. District

11     Court; Case CV13-008312-SVW (FFMx).

12             My name is Gary Casselman.  And pursuant

13     to Federal Rules of Civil Procedure, Rule 28, I

14     will be the person video-ing the proceedings here.

15     I'm also an attorney for the plaintiffs, and so I

16     will be multitasking.

17             Hopefully, we won't have too many

18     construction workers whistling outside our window.

19             In any event, sir, have you ever had your

20     deposition taken before?

21             THE DEPONENT:  No.

22             THE REPORTER:  Counsel, would you like me

23     to swear the witness in?

24             MR. CASSELMAN:  All right.  Let's go

25     ahead and swear the witness.

                                                    5

```
 1    have of any words?

 2         A.   I really can't give you -- I don't want

 3    to speculate.

 4         Q.   Now, you are trained that you are not

 5    allowed to use force against somebody because they

 6    use profanity against you; right?

 7         A.   Correct.  That would be unreasonable

 8    force.

 9         Q.   And by the way, do you have any tattoos

10    on yourself, sir?

11         A.   Yes, I do.

12              MS. MATHERS:  Objection.  It's a

13    violation of his privacy.

14         Q.   BY MR. CASSELMAN:  And on what part of

15    your body are they, sir?

16         A.   I have a tattoo on my ankle.

17         Q.   And what is it of?

18         A.   It's a tattoo of a reaper.

19         Q.   Like a Grim Reaper?

20         A.   Like a Grim Reaper, yes.

21         Q.   And which ankle is it, sir?

22         A.   It's on my left ankle.

23         Q.   And does it have a number?

24         A.   Yes, it does.

25         Q.   What's the number?
```

64

```
 1           A.    96.

 2           Q.    And when did you receive it?

 3           A.    It would be sometime last year.

 4           Q.    After the shooting?

 5           A.    Yes, it was.

 6           Q.    And what would be the date that you got

 7     it?

 8           A.    I really don't know the date.

 9                 MS. MATHERS:  You can just give him an

10     approximation.

11           Q.    BY MR. CASSELMAN:  This is early March.

12     So was it in December?  November?  I mean, it was

13     last year; right?

14           A.    No, the incident wasn't in March.

15           Q.    No.  I'm saying we are in March now.

16           A.    I'm sorry.

17           Q.    So when, in time, did you get your "Grim

18     Reaper No. 96" tattoo?

19           A.    Well, I never said it was a Grim Reaper.

20     I (unintelligible) --

21                 (Two or more voices speaking at once.)

22           Q.    BY MR. CASSELMAN:  It was a reaper?

23           A.    It was described as "a Grim Reaper."

24                 MS. MATHERS:  He just wants the

25     approximate date that you got the tattoo.
```

65

```
 1              THE DEPONENT:  Probably about -- I'd say
 2     about a year ago.  Maybe March of 2013.
 3         Q.  BY MR. CASSELMAN:  March of 2013.  Where
 4     did you get it?
 5         A.  At -- well, it was a tattoo shop.  And I
 6     really don't remember where it was at.
 7         Q.  Well, let's start out with the county.
 8     Was it L.A. county?
 9         A.  Yeah, I believe so.
10         Q.  And what was the name of the tattoo shop
11     or its location?
12         A.  I really don't remember.
13         Q.  How did you learn about the tattoo
14     shop?
15         A.  What do you mean, "how did I learn about
16     it"?
17         Q.  Pardon me?
18         A.  What do you mean by "how did I learn
19     about it"?
20         Q.  Well, why did you pick that particular
21     tattoo shop?
22              MS. MATHERS:  I'll object on relevance
23     grounds.
24              But go ahead.
25              THE DEPONENT:  I didn't pick a tattoo
```

66

```
 1    did -- Deputy Swanson -- did you discuss getting

 2    these tattoos together?

 3         A.   I don't remember if we discussed getting

 4    the tattoos together.

 5         Q.   But it just happened that you were both

 6    at the same tattoo parlor, at the same time,

 7    getting a reaper tattoo on your ankle?

 8              Is that about how it happened?

 9         A.   Correct.

10         Q.   Was it a coincidence, or did you go there

11    together?

12         A.   I told you we went together.  Yes.

13         Q.   All right.  And Munoz went with you;

14    correct?

15         A.   Deputy Munoz and Deputy Meza, yes.

16         Q.   What's the last name?

17         A.   Juan Meza, M-e-z-a.

18         Q.   Are these all folks who are deputies at

19    the same station as you?

20         A.   Yes, they are.

21         Q.   Okay.  Describe the design of the reaper

22    tattoo that you and Swanson received.

23              MS. MATHERS:  Objection.  Asked and

24    answered.

25              MR. CASSELMAN:  Never got an answer.
```

                                                              74

```
 1              THE DEPONENT:  That -- it's a reaper --
 2     tattoo of the reaper.
 3         Q.   BY MR. CASSELMAN:  Well, what -- describe
 4     what that is.  I mean, I have my own idea, but I
 5     don't want to leave it up in the air, for anybody
 6     to make their own conclusions.
 7         A.   It's a tattoo of a reaper holding a --
 8         Q.   Thing with -- a long curvy thing, with a
 9     big staff?
10         A.   Yes.
11         Q.   That's, like -- that's, like, the symbol
12     for death, isn't it -- the reaper?
13              MS. MATHERS:  Objection.  Lacks
14     foundation.
15              If you know, you may answer.
16              THE DEPONENT:  I know it -- I've known it
17     to be a symbol for death.  That's not the only
18     symbol for it, but yeah, it's a symbol of death.
19         Q.   BY MR. CASSELMAN:  So it's your testimony
20     that you got this tattoo, with your partner, after
21     the shooting of Mr. Gutierrez, in which
22     Mr. Gutierrez died, to show pride?
23         A.   Like I said, you keep -- I know you want
24     to bring it in, and you want to somehow tie in the
25     tattoo with the unfortunate incident, but it had
```

75

1    STATE OF CALIFORNIA          )
                                  )   ss:
2    COUNTY OF LOS ANGELES        )

3

4           I, ELENA C. CHESTER, do hereby certify:

5           That I am a duly qualified Certified Shorthand

6    Reporter, in and for the State of California, holder of

7    certificate number 10274, which is in full force and

8    effect and that I am authorized to administer oaths and

9    affirmations;

10          That the foregoing deposition testimony of the

11   herein named witness was taken before me at the time and

12   place herein set forth;

13          That prior to being examined, the witness named

14   in the foregoing deposition, was duly sworn or affirmed

15   by me, to testify the truth, the whole truth, and

16   nothing but the truth;

17          That the testimony of the witness and all

18   objections made at the time of the examination were

19   recorded stenographically by me, and were thereafter

20   transcribed under my direction and supervision;

21          That the foregoing pages contain a full, true

22   and accurate record of the proceedings and testimony to

23   the best of my skill and ability;

24          That prior to the completion of the foregoing

25   deposition, review of the transcript was requested.

160

David Chevez                                                                                    March 5, 2014

```
 1              I further certify that I am not a relative or

 2      employee or attorney or counsel of any of the parties,

 3      nor am I a relative or employee of such attorney or

 4      counsel, nor am I financially interested in the outcome

 5      of this action.

 6

 7              IN WITNESS WHEREOF, I have subscribed my name

 8      this ____ day of _____, ____.

 9

10

11         _____

12              ELENA C. CHESTER, CSR No. 10274

13

14

15

16

17

18

19

20

21

22

23

24

25
```

161