Samuel O. Ogbogu, Esq. (#156427)
SAMUEL OGBOGU, INC.
4311 Wilshire Boulevard, Suite 308
Los Angeles, CA 90010
Telephone: (213) 624-1500
Facsimile: (213) 802-2946
sogboguinclaw@aol.com

Robert S. Shtofman, Esq. (#135577)
Law Ofc Robert S. Shtofman
18150 Chardon Cir.
Encino, CA 91316
Tel. (818) 609-0090
Fax (818) 609-1977
RShtofman@gmail.com

Gary S. Casselman, Esq. (#81658)
CASSELMAN LAW OFFICES
3415 S. Sepulveda Blvd., Suite 100
Los Angeles, CA 90034
Tel. (310) 314-4444 Fax: (310) 314-4447
garyscasselman@gmail.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

N.G. AND L.G., minors, by and through their Guardian ad Litem, Lilliana Magallon; SARA PEREZ.

               Plaintiffs,

vs.

COUNTY OF LOS ANGELES; LEROY BACA, DAVID CHEVEZ, LAURENCE SWANSON, DOES 5 – 10.

               Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: CV13-008312-SVW (FFMx)

PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF LAW AND FACT

TRIAL: August 12, 2014
PTC:    July 28, 2014
TIME:   3:00 p.m.
CTRM: 6

Assigned to the Honorable Stephen J. Wilson, United States District Court Judge

TO THE HONORABLE COURT, ALL PARTIES, AND COUNSEL HEREIN: Plaintiffs hereby submit this Memorandum of Contentions of Fact and Law pursuant to Local Rule 16-4 in anticipation of the Final Pretrial Status Conference on July 28, 2014.[1]

---

[1]Plaintiffs will submit an ex-parte application to continue the trial, pretrial and related dates due to witness unavailability and the need to complete expert discovery.  Defendants declined to stipulate.

1

# **TABLE OF CONTENTS**

I. Introduction/summary of Factual Contentions. . . . . . . . . . . . . . . . . . . . . . .

II. Claims and Defenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III.  Anticipated Evidentiary Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV. Anticipated Legal Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

V. Bifurcation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VI. Jury Trial.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VII. Attorneys' Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VIII. Abandonment of Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

1    **Plaintiffs' Memorandum of Contentions of Law and Fact**
2    **I. INTRODUCTION**
3         This action arises from the fatal shooting of Jilberto Gutierrez,
4    father and son of Plaintiffs.  At the time he was shot, Mr. Gutierrez was
5    a patient at Centinela Hospital, admitted to the emergency department,
6    and brought in by defendants Los Angeles County Sheriff Deputies
7    David Chevez and Lawrence Swanson.   He had been arrested 11 hours
8    earlier for a non-violent offense.  He was taken to the hospital after
9    complaining of dizziness and chest pain.  He later declined medical care.
10        Mr. Gutierrez was shot through the top of his head while
11   handcuffed by one hand to the bed rail of the hospital gurney on which
12   he had been (or was) laying.  The circumstances of the shooting are hotly
13   contested.  Numerous nurses and a treating doctor testified that
14   decedent was calm and cooperative throughout the time leading to the
15   subject incident.   They never heard him raise his voice or act in an
16   aggressive manner.
17        Several nurses heard a commotion shortly after 1 a.m. which
18   sounded like arguing.  It was also reported that there was a sound like
19   the handcuff moving laterally upon the bed rail.  One of the nurses
20   entered the room in time to see the deputy near the head of the bed
21   using overhand strokes downward onto the patient with an ASP baton
22   toward or upon the prone patient. With his free right hand, Gutierrez
23   attempted to protect himself from the numerous blows being struck by
24   Defendant Chevez.   Deputy Swanson reportedly stood near the foot of
25   the bed, approximately two feet away.  One witness described the scene
26   as "surreal" and partially closed the curtain and moved to leave the
27   room.  Another nurse witness saw the prone patient's legs beyond the
28   half-pulled privacy curtain and a deputy standing by the foot of the bed

3

1   apparently physically uninvolved with the patient whose legs were
2   moving up and down, as though bicycling.  This nurse saw the feet of
3   someone near the head of the bed engaged in some activity.  This was the
4   same deputy seen by the other nurse making overhand strikes to the
5   prone patient.

6       Although defendants claim an elaborate scenario involving the
7   handcuffed Gutierrez reaching for a holstered weapon, these nurse and
8   other independent eyewitnesses dispute this version.

9       Defendants' version of the incident is that decedent reached to his
10   left, over his handcuffed left wrist, to grab the holstered firearm of
11   Deputy Swanson who claims he pressed down on Gutierrez's right hand
12   on the firearm grip to retain the firearm in its specially designed "high
13   retention" holster.  Defendants claim that Deputy Chevez then punched
14   Guteirrez in the face 5 to 10 times, struck him over the head with 10 to
15   15 ASP baton blows, then Deputy Swanson removed one of his two
16   hands over decedent's right hand, deployed pepper spray, *then* decedent
17   released his grip of the weapon.  It is then claimed by defendants that
18   decedent, despite the foregoing battering, leaped over the bed rail to
19   which he was still handcuffed and attempted vainly to reach for Deputy
20   Swanson's still holstered weapon as Swanson continued to back away.
21   Decedent reached full extension handcuffed to the 320 to 343 pound
22   gurney and never came closer to Swanson – per defendants' version –
23   than two feet.  It was at that time, that defendants claim that the fatal
24   shooting occurred.  That claim is not supported by any independent
25   witnesses or any scientific evidence.  Reportedly, the Sheriff's
26   Department sampled Swanson's holster and handgun for fingerprints
27   and DNA, but no report of any results has been provided in discovery or
28   otherwise.

1      Even by Defendants' version, decedent was not touching or holding

2  the firearm when fatally shot through the top of his head, by defendant

3  Chevez.  This shooting was ostensibly from decedent's left – still

4  handcuffed by his left hand to the gurney's railing – was standing and

5  reaching for Deputy Swanson some two feet away, as Swanson backed

6  further away.  Yet decedent was shot on the top of the *right side* of his

7  head.  Defendants' sworn version of the incident, subscribed to by both

8  defendants, was not possible according to the Deputy Medical Examiner,

9  Cho Lwin, M.D., who examined the wound track during the autopsy.

10      The wound track observed at autopsy in decedent's head, entered

11  the (top) right parietal area, went sharply downward with a slight right

12  to left deviation according to Los Angeles County Deputy Medical

13  Examiner Cho Lwin, M.D.  According to Lwin, he observed the wound

14  track to go sharply downward, severing the brain stem and coming to

15  rest in the pharynx (at the back of the throat.)

16      Dr. Lwin was shown a photograph of Chevez's demonstrated

17  shooting position sworn to by defendant Chevez and Chevez's sworn to

18  position of decedent at the moment of the shooting (also demonstrated

19  and photographed) then Dr. Lwin stated that the wound track he

20  discovered would not have occurred from those respective positions.

21      The parties have just exchanged voluminous expert reports and

22  exhibits; rebuttal expert designation is pending, but expert discovery has

23  not commenced, though the currently scheduled trial date is mere weeks

24  away.

25      Additionally, Defendants filed a motion for partial summary

26  judgment, which Plaintiffs opposed, upon which the Court must rule,

27  which may also affect the presentation of evidence in the case.

28      The Court bifurcated and stayed discovery as to the *Monell* claims

against the County and the state law claims (the fourth, fifth, sixth, and seventh causes of action) pending adjudication of the constitutional claims against the individual deputies. (See Docket No. 28.)

## II.   CLAIMS AND DEFENSES (Local Rule 16-4.1)

**A.  At trial, Plaintiffs plan to pursue the following claims against the following defendants:**

**Claim 1**:  Plaintiffs N.G., and L.G. have abandoned this claim against Deputy Kelley-Eklund ,Deputy Gomez and Doe 5; a Rule 41 dismissal will be filed shortly.

**Claim 2:** Unreasonable search and seizure –Excessive Force (42 U.S.C. § 1983) by Plaintiffs N.G., and L.G. against Deputy Chevez.   Plaintiffs contend that Defendant Chevez used excessive (and deadly) force against their decedent in violation of his Fourth Amendment rights and 42 U.S.C. § 1983.   Plaintiffs bring this claim in their individual capacities and as successors in interest to decedent.   They seek wrongful death damages, punitive damages and reasonable attorneys fees under federal law for this claim.   Defendants Chevez and Swanson were acting under color of law at the time of the incident.

**ELEMENTS REQUIRED TO ESTABLISH PLAINTIFFS' SECTION 1983 CLAIMS:**

As a threshold matter, actions brought under 42 U.S.C. § 1983 requires that Plaintiffs prove the following by a preponderance of the evidence:

    1.  The deputy used excessive force against the decedent and

    2. The excessive force was a cause of injury, harm, pain, suffering and

1  loss of life to Mr. Gutierrez and a cause of the resulting injury, damage, loss
2  and harm to Plaintiffs.   *See* 9th Cir. Man. of Model Jury Instr., § 9.22 (2007).
3
4  **Claim 3:**   Interference with Familial Relationship (42 U.S.C. § 1983) by
5  Plaintiffs N.G., L.G., and Sara Perez against Deputy Chevez and Deputy
6  Swanson.
7       The use of deadly force against decedent violated Plaintiffs' Fourteenth
8  Amendment substantive due process right to a continued familial relationship,
9  companionship and society with their father and son. *Strandberg v. City of*
10 *Helena* 791 F.2d 744 (9th Cir. 1986); *Smith v. City of Fontana* 818 F.2d 1411,
11 140 (9th Cir. 1987) overruled on other grounds by *Hodgers-Durgin v. de la Vina*
12 199 F.3d 1037 (9th Cir. 1999). Both parents and children of a decedent have been
13 found to have Fourteenth Amendment protected liberty interest in a continued
14 familial relationship. *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th
15 Cir.1991).
16       Plaintiffs bring this claim in their individual capacities and seek recovery
17 for loss of their decedent's love, companionship, comfort, care, assistance,
18 protection, affection, society, moral support, and seek damages, punitive
19 damages and attorneys fees under federal law for this claim.
20
21 **ELEMENTS REQUIRED TO ESTABLISH PLAINTIFFS'**
22 **FOURTEENTH AMENDMENT CLAIMS:**
23 1. Defendants acted with deliberate indifference to the decedent's rights;
24 See, *Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008). Further, whether
25 Plaintiffs must prove that Defendants acted with "purpose to harm unrelated
26 to a legitimate law enforcement objective" depends on the jury's factual
27 determinations as to whether the officer defendants had time to deliberate.
28

1   **Claim 4:** Municipal liability (42 U.S.C. § 1983) by Plaintiffs N.G. and L.G.
2   against Defendant County. This claim was stayed by the Court to be heard at
3   a later date. See Docket. No. 28.

4

5   **Claim 5:**   Wrongful Death by Plaintiffs N.G. and L.G. against Defendants
6   Chevez, Swanson, Doe 5. This claim and discovery thereon was stayed by the
7   Court to be heard at a later date.  See Docket. No. 28.

8        Plaintiffs seek wrongful death damages under state law for this claim
9   and allege that the County of Los Angeles is vicariously liable for
10  defendants' conduct for this claim.  Plaintiffs contend that Defendants were
11  negligent in their pre-shooting tactics and in the use of deadly force against
12  the decedent.

13       Under California negligence law, "peace officers have a duty to act
14  reasonably when using deadly force" *Hayes v. Couty of San Diego* 57 Cal. 4th
15  622, 629 (2013); *Munoz v. Olin* 24 Cal.3d 629, 634 (1979); *Grudt v. City of Los*
16  *Angeles* 2 Cal.3d 575, 587 (1970).  Whether the officers were negligent in
17  their use of force must be considered under the totality of circumstances...
18  including the officers' actions preceding the use of deadly force... "that are
19  part of the continuum of circumstances surrounding a single use of deadly
20  force." *Hayes, supra,* 57 Cal 4th at 637-8

21

22  **Claim 6:**     Battery by Plaintiffs N.G. and L.G. against Defendants Chevez
23              and Swanson. This supplemental state claim was stayed by the
24              Court to be heard at a later date. See Docket. No. 28.

25       Plaintiffs contend that Defendants used unreasonable force against
26  decedent when Defendant Chevez shot and killed Mr. Gutierrez, causing his
27  death. *Munoz v. City of Union City* 120 Cal.App. 4th 1077.  Plaintiffs seek
28  wrongful death damages, punitive damages and attorneys fees under  state

law for this claim.

In the context of a police officer's use of force, a state law battery claim is a counterpart of a federal excessive force claim and similar standards apply. *Brown v. Ransweiler* 171 Cal.App.4th 516, 527 (2009); *Edson v. City of Anaheim* 63 Cal. App. 4th 1269, 1274-75 (1998)

**ELEMENTS REQUIRED TO ESTABLISH PLAINTIFFS' BATTERY CLAIM:**

1.  Defendants used unreasonable force against Mr. Gutierrez

2. Mr. Gutierrez did not consent to that use of force

3. Defendants' use of unreasonable force was a substantial factor in causing Mr. Gutierrez' death.  See, CACI 1305.

**Claim 7:**   Negligence by Plaintiffs N.G. and L.G. Defendants against Chevez and Swanson. This claim was stayed by the Court to be heard at a later date. See Docket. No. 28.

(C) **In brief, the key evidence Plaintiffs rely on for each of their claim is:**

(a) testimony of the Plaintiffs

(b) testimony of Defendant Chevez

(c) testimony of Defendant Swanson

(d) Testimony of several witnesses, including Jacob Marhefky, Kimberly King, Erendira Sanchez-Soto, Bettye Chism, all nurses at the hospital where the shooting occurred;

(e) Testimony of Dr. Arnold Sin, MD, emergency room treating doctor

(f) Testimony of Los Angeles County Medical Examiner Cho Lwin, M.D.

(g) Testimony of Plaintiff's experts Ronald Scott, ballistics, Thomas

Streed, Ph.D., crime scene analysis, police practices expert, Jesse Wobrock, Ph.D., biomechanics, scene reconstruction, one or more rebuttal experts to be designated by Plaintiffs.

(h) Testimony of observations and actions taken by Los Angeles County Sheriff's Department investigators Salerno, Duval, Maxwell and Short.

(i) Photos of the scene

(j) Photos of decedent at scene after shooting

(k) Autopsy report and selected photographs therefrom[2]

(l) Police reports

(m) Testimony of Alex Strouzer, Brenda Shafer, Margaret Kaleuati, Maryan Nickooshiam, Ronald Scott concerning bullet impact, trajectories, stippling, gunshot residue, fingerprint, DNA analysis and other physical/scientific evidence

(n) Plaintiff's funeral and burial expenses

(o) Photographs of decedent with Plaintiffs and family members

(p) Reference to original statements and depositions of the involved officers and witnesses.

(q) Testimony of Evelyn Davis and Felix Travis.

( r) Plaintiffs' Rebuttal Witness(es) To Be Designated.

(s) Plaintiffs' Expert Economist Robert Johnson or James Mills regarding economic impact of wrongful death/ violation of civil rights of Plaintiffs and their decedent Jilberto Gutierrez.

## III. ANTICIPATED EVIDENTIARY ISSUES

Plaintiffs filed the following Motions in Limine:

Motion in Limine No. 1: to Exclude Evidence, Argument, or Reference to Decedent's tattoos;

---

[2]Plaintiffs have moved *in limine* to exclude decedent's tattoos from being shown.

Motion in Limine No. 2: to Exclude Evidence of Gutierrez alleged gang affiliation or membership;

Motion in Limine No. 3: to Exclude Evidence, Argument, or Reference to Prior Arrests, Convictions and Other Bad Acts;

Motion in Limine No. 4: to Exclude Evidence That Prior to October 17, 2012 The Decedent Had Possessed, Sold, or Used Illegal Drugs or Alcohol;

Motion in Limine No. 5: to Exclude Evidence That Decedent Had Possessed Drugs on October 17, 2012 and was under the influence on October 18, 2012;

Motion in Limine No. 6: to Exclude Evidence of Accolades, Awards or Certificates Received By Defendants or Witnesses;

Motion in Limine No. 7: to Exclude Documents, Witnesses and Opinions Not Properly Disclosed by Defendants or by Defendants' Experts;

Motion in Limine No. 8: to Exclude Evidence or Argument to Jurors that they Ought to Imagine Themselves in the Same Position as or Put Themselves in the Shoes of Defendants;

Motion in Limine No. 9: to Exclude Evidence that Decedent was "a Felon" and that he was on Probation;

Motion in Limine No. 10: to Exclude Evidence, Inference or Argument of Any Adverse Consequences that One or More Defendants May Suffer as a Result of a Plaintiffs' Verdict.

Defendants filed the following Motions in Limine, which Plaintiffs opposed (with two exceptions):

Defendants' Motion in Limine #1 to exclude evidence of deputy tattoos;

Motion in Limine No. 2: to Exclude Evidence of or Reference to FBI or Other Investigations Involving the LASD (Not Opposed);

11

Motion in Limine No. 3: to Exclude Evidence of or Reference to Stayed Portions of the Case;

Motion in Limine No. 4: to Exclude Evidence of or Reference to Other Shootings;

(There is no Motion in Limine #5 filed by Defendants.)

Motion in Limine No. 6: to Exclude Evidence Relating to What Deputies Could or Would Have Done Differently;

Motion in Limine No. 7: to Exclude Accident Reconstruction by the Coroner, Dr. Lwin;

Motion in Limine No. 8: to Exclude Evidence, Testimony or Argument Regarding the Opinion by the Coroner Dr. Lwin Regarding Baton Strikes and Their Effect on Consciousness;

Motion in Limine No. 9: to Exclude Evidence or Opinions Re: Accident Reconstruction by Homicide Investigator;

Motion in Limine No. 10: to Exclude Evidence or Reference to the Representation of the Coroner, Dr. Lwin, by Defense Counsel.

## IV.  ANTICIPATED LEGAL ISSUES

Plaintiffs anticipate raising *Daubert*/ Rule 26 non-compliance, foundation objections to Defendants' designated experts Delhauer, Spiehler, Trompetter and Hoffman, *inter alia*.  Plaintiffs' objections may take the form of a pre-trial motion or *voir dire* of the purported experts under FRE 104.

Plaintiffs further anticipate that Defendants will assert the affirmative defense of qualified immunity.  However, this is a legal issue to be determined by the Court, if at all, and not by the jury.

## V.  BIFURCATION

The Court has already bifurcated the Monell 1983 claim to be tried

separately, and the state law causes of action for wrongful death, battery and negligence. See Docket No. 28.

On February 27, 2014, the Court bifurcated trial of the § 1983 claims from the state law claims, and bifurcated trial of the § 1983 claims against the individual deputies from the § 1983 claim against the County in accordance with *Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996). The Court stayed discovery on the fourth, fifth, sixth and seventh causes of action.

## VI. JURY TRIAL

Plaintiffs made a timely demand for trial by jury.  Plaintiffs will seek an ex-parte application to continuance of trial due to unavailability of witnesses, additional time to complete expert depositions and Defendants' failure/refusal to stipulate to such a continuance.

## VII. ATTORNEYS' FEES

If plaintiffs' prevail at trial, they are entitled to an award of attorneys' fees pursuant to 42 U.S.C. 1988, *Hensley v. Eckhart* 461 U.S. 424, 429 (1983*)*, and under state law pursuant to California Civil Code Section 1021, et seq.

## VIII. ABANDONMENT OF ISSUES

After meeting and conferring, Plaintiffs agreed to dismiss all claims against Deputies Gomez and Kelley-Eklund, therefore all claims relating to false arrest and false imprisonment have been abandoned.

DATED: July 20, 2014                          Respectfully Submitted,

/s/Gary S. Casselman, Esq.
Gary S. Casselman, Esq
Robert S. Shtofman, Esq
Samuel Ogbogu, Esq.
Attorneys for Plaintiffs